**Howard LASKER and Julianne Ramos,
Plaintiffs–Appellants,**

**v.**

**NEW YORK STATE ELECTRIC & GAS
CORPORATION and James A. Carrigg,
Defendants–Appellees.**

No. 1234, Docket 95–7953.

United States Court of Appeals,
Second Circuit.

Argued March 29, 1996.

Decided May 22, 1996.

Gary S. Graifman, Chestnut Ridge, NY (Kantrowitz & Goldhamer, P.C., Chestnut Ridge, NY, Howard T. Longman, Stull, Stull & Brody, New York City, Steven Pasternak, Pasternak, Feldman & Plutnick, Livingston, NJ, on the brief), for Plaintiffs–Appellants.

Stephen A. Radin, New York City (Dennis J. Block, Paul J. Collins, Weil, Gotshal & Manges LLP, New York City, John D. Draghi, Huber Lawrence & Abell, New York City, of counsel), for Defendants–Appellees.

Before: OAKES and PARKER, Circuit Judges, and KNAPP, District Judge.*

PER CURIAM.

Plaintiffs Howard Lasker and Julianne Ramos appeal from a Memorandum and Order of the United States District Court for the Eastern District of New York (Allyne R. Ross, Judge) dismissing their Amended Complaint against the New York State Electric & Gas Corporation (hereinafter "NYSEG") and James A. Carrigg, its Chairman, President and Chief Executive Officer. Filed on behalf of all those who purchased NYSEG common stock between May 15 and August 10, 1994 pursuant to the Company's Dividend Reinvestment Plan Prospectus, the complaint alleged violations of: (1) Sections 11 and 12(2) of the Securities Act of 1933 (15 U.S.C. §§ 77k & 77l(2)(1994)), which create a cause of action for material misrepresentations of fact made in connection with the sale of a security; (2) Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated thereunder (15 U.S.C. § 78j(b) (1994) & 17 C.F.R. 240.10b–5 (1994)), which make it unlawful to use or employ a "manipulative or deceptive device or contrivance" in connection with the purchase or sale of any security; and (3) Section 20 of the Securities Exchange Act of 1934 (15 U.S.C. § 78t (1994)), which establishes control person liability for a primary violation of the securities laws. For the following reasons, we affirm the judgment of the district court dismissing plaintiffs' complaint in its entirety.

I.

BACKGROUND

The New York State Public Service Commission (hereinafter "PSC") is the entity charged with regulating public utilities in New York State. On April 28, 1992, the PSC issued an order authorizing NYSEG to invest up to 5% of its consolidated capitalization in certain unregulated businesses. NYSEG's initial diversified investment came in May 1993. At that time, NGE Enterprises, Inc., a wholly-owned subsidiary of NYSEG, formed a computer software company, EnerSoft, to produce and market software applications for natural gas utilities.

Previously, on February 16, 1993, NYSEG had issued a Prospectus offering holders of NYSEG common stock the opportunity to reinvest cash dividends automatically in additional shares of the Company common stock—a "Dividend Reinvestment Plan." The Prospectus incorporated by reference several documents previously filed with the SEC and further provided that "[a]ll documents filed by the Company pursuant to Sections 13 or 14 of the 1934 Act after the date of this Prospectus and prior to the termination of the offering of the securities offered hereby shall be deemed to be incorporated by reference in this Prospectus."

On March 15, 1994, NYSEG filed its form 10–K for the fiscal year ending December 31, 1993, pursuant to § 13 of the '34 Act. The 10–K contained the following language:

Diversification will play an important role in the Company's future. While the strength of the Company's core electric and natural gas businesses remains its focus, and while the Company will not compromise its financial integrity, it is actively evaluating a number of corporate development opportunities for investment to help augment future earnings and dividend growth. In April 1992, the PSC issued an order allowing the Company to invest up to 5% of its consolidated capitalization ... in one or more subsidiaries that may en-

---

* Honorable Whitman Knapp, United States Senior District Judge for the Southern District of New York, sitting by designation.

gage or invest in energy-related or environmental services businesses and provide related services. In May 1993, NGE Enterprises, Inc. ("NGE"), a wholly owned subsidiary of the Company, formed a computer software company, Enersoft Corporation ... to produce and market software applications for natural gas utilities.... This represents NGE's initial diversified investment.

The Company also issued its 1993 Annual Report. That report contained the identical language quoted above as well as other statements relating to the investment plan offered in the Prospectus, diversification activities, and projected earnings. With respect to the Prospectus, the Annual Report stated:

The PSC adopted a new, innovative approach in December 1993 when it issued an order to the Company that provides for advanced approval for financings during the Company's three-year rate settlement. That order includes ... issuance of common stock through the Dividend and Stock Purchase Reinvestment Plan.... With this order, the Company has the flexibility to achieve its financial goals of further reducing financing costs and improving its financial health as market conditions allow.

With respect to diversification, the Annual Report stated:

NGE Enterprises Inc .... has formed Enersoft Corporation, a computer software company that produces and markets software applications for natural gas utilities, marketers, and pipelines.... In October EnerSoft began a strategic alliance with the New York Mercantile exchange to develop an information super highway that will provide the natural gas industry with a single system for monitoring and trading natural gas and pipeline capacity in the North American market. These diversification activities demonstrate our commitment to create earnings opportunities out of the challenges to utility deregulation.

With respect to future earnings, the Annual Report stated:

We must significantly improve earnings if we are to continue even modest annual dividend increases....

. . . .

It's a wide open game now in the natural gas industry. We are convinced our business strategies will lead to continued prosperity. With the December hook-up of a large pharmaceutical company in northern New York state we added 350,000 dekatherms of sales and surpassed our 1993 sales goal. Our 1994 sales goal is the most aggressive ever....

In August 1994, the Company filed its Form 10–Q with the SEC for the quarterly period ending June 30, 1994. With regard to diversification, the 10–Q reported:

Progress at Enersoft has been slower than anticipated as it is taking longer than expected to bring the software products and services to market. As a result, NGE has invested a greater amount in EnerSoft than originally projected and, like most start-up companies, EnerSoft has been incurring operating losses. It is anticipated that EnerSoft will continue to incur operating losses in the near term.

Also in August, NYSEG issued a press release conceding losses resulting in part from "start-up diversification efforts [which] will prohibit us from earning our allowed return." The dividend paid to shareholders was reduced by 30% as compared to past years. The stock price fell $4⅝ to $20⅞.

Shortly thereafter, plaintiffs filed this lawsuit. Alleging violations of the Securities Act of 1933 and the Securities Exchange Act of 1934, they claimed that defendants had misled shareholders by making unduly optimistic statements in NYSEG's 1993 Annual Report and March 1994 Form 10–K about the likely financial effect of diversification. On August 21, 1995, the district court granted the defendants' motion to dismiss the claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief could be granted. *Lasker v. New York Elec. & Gas Corp.*, No. 94 Civ. 3781 (E.D.N.Y. Aug. 21, 1995). This appeal followed.

## II.

### DISCUSSION

Each of the securities laws invoked by plaintiffs requires that they identify a materi-

ally misleading statement made by the defendants. *I. Meyer Pincus & Assoc. v. Oppenheimer & Co.*, 936 F.2d 759, 761 (2d Cir. 1991). Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), prohibits any person from using or employing a "manipulative or deceptive device or contrivance" in connection with the sale of a security. Rule 10b–5, 17 C.F.R. § 240.10b–5, issued under that statute, prohibits the making of "any untrue statement of a material fact or [omission of] a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, creates a cause of action when any part of a registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." Finally, Section 12(2) of the Act imposes liability on any person who offers or sells a security by means of a prospectus or oral communication including a materially misleading statement or omission. 15 U.S.C. § 77l(2).

▪ Plaintiffs maintain that the portions of NYSEG's Annual Report and Form 10–K excerpted above contain material, false, and misleading statements designed to lull investors into believing that diversification would only enhance future earnings and ensure increases in dividend payments. They claim that these statements were knowingly false and misleading, as NYSEG was aware that other utilities that had attempted to diversify had suffered a significant decrease in earnings. Thus, the argument goes, the company should have revealed to investors that the prospects of diversification were, at best, speculative.

In a thorough and well-reasoned opinion, the district court dismissed plaintiffs' complaint in its entirety. *Lasker v. New York State Electric & Gas Corp.*, No. 94 Civ. 3781 (E.D.N.Y. Aug. 21, 1995). We adopt the holding and reasoning of the district court insofar as it found that the statements in-

voked by plaintiffs were neither misleading nor material, and therefore could not form the basis for a securities fraud claim.[1]

The court began by holding that the statements in NYSEG's annual report and 10–K form regarding future earnings, sales goals, and NYSEG's desire to achieve continued prosperity were "just the sort of predictive statements of opinion and belief that courts have found immaterial." *Id.* at 12 ("Statements that a company is committed to increasing earnings, convinced of its business strategy, and has set its most aggressive goals ever are not considered seriously by the marketplace and investors in assessing a potential investment."). It went on to reject plaintiffs' reliance on statements in the 10–K Form and prospectus, which plaintiffs claimed had misled them in believing that diversification would augment future earnings and would not affect the company's financial integrity.

A reasonable investor reading the language in the 10–K could only recognize that NYSEG was indeed seeking to enhance its growth by pursuing other development opportunities such as those available through NGE. The Company could not guarantee and did not guarantee, as plaintiffs contend, that its investment choices would yield increased future earnings. Contrary to plaintiffs' assertion, ... the [C]ompany stated that *it* would not *compromise* its financial integrity, not that diversification would not affect the Company's financial integrity. The only reasonable interpretation of the 10–K language was that the Company would attempt to pursue diversification projects likely to succeed and would not over-extend its investments into diversification in a manner that would jeopardize the long-term financial stability of the Company. In other words, this statement merely indicates the Company's intention to avoid financial risks that could threaten the financial stability of the Company; it is not a guaran-

---

**1.** This determination provides sufficient grounds to dismiss plaintiffs' claims. As a result, we need not reach any of defendants' additional arguments, or the district court's additional grounds for dismissal.

tee that diversification will never adversely impact growth and earnings.

*Id.* at 15.

 In addition, the district court rejected plaintiffs' claim that NYSEG was under an obligation to reveal to its shareholders the financial troubles of other utilities that had attempted to diversify:

> Plaintiffs do not suggest that the other utility companies attempted similar projects—such as software development—such that NYSEG might be deemed reckless in ignoring such information and in breach of an obligation to disclose it to potential investors. Plaintiffs assert nothing more than that other companies (Brooklyn Gas, for one) attempted to diversify, unsuccessfully, in some unspecified way.

*Id.* at 16.

 We agree with the district court's conclusion: Plaintiffs have failed to point to any material misstatement on the part of NYSEG. By telling its investors that it would not "compromise its financial integrity," NYSEG was not representing that its actions would in no way impact the company's finances. Nor did it certify that the company would not suffer losses when it touted its "commitment to create earnings opportunities." Likewise, by proffering its conviction that these "business strategies [would] lead to continued prosperity," NYSEG was in no way insuring that dividend rates would remain constant, or that the stock price would not decline. These statements consist of precisely the type of "puffery" that this and other circuits have consistently held to be inactionable. *See, e.g., San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos., Inc.,* 75 F.3d 801, 811 (2d Cir.1996) ("Such puffery cannot have misled a reasonable investor...."); *Raab v. General Physics Corp.,* 4 F.3d 286, 289–90 (4th Cir.1993) (" 'Soft,' 'puffing' statements ... generally lack materiality....").

A reasonable investor would not believe that, by merely making the broad, general statements cited in this complaint, NYSEG had insured against the risks inherent in diversification. Plaintiffs have not come close to alleging an actionable case of stock fraud.

The judgment of the district court is affirmed.