Alan RAPOPORT, et al., on behalf of themselves and all others similarly situated, Plaintiffs,

. v.

ASIA ELECTRONICS HOLDING CO., INC., Du Quingsong, Fan Baiyan, Li Lianjie, Barington Capital Group, L.P., and Value Investing Partners, Inc., Defendants.

No. 98 Civ. 5785(DNE).

United States District Court, S.D. New York.

March 7, 2000.

Steven G. Schulman, Samuel H. Rudman, Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P., Michael A. Swick, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York, NY, for Plaintiffs.

## ORDER & OPINION

EDELSTEIN, District Judge.

Lead Plaintiffs Alan Rapoport and various other individuals ("Rapoport Group"), on behalf of themselves and all others similarly situated (collectively "Plaintiffs"), bring this uncertified securities class action, pursuant to Federal Rules of Civil Procedure ("Rules") 23(a) and (b)(3) and §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"), against: (1) Defendant Asia Electronics Holding Co., Inc. ("Asia Electronics" or "Company") for allegedly violating the Securities Act through the issuance of common stock in a September 25, 1997 Initial Public Offering ("IPO") pursuant to the Company's materially false and misleading Registration Statement and Prospectus dated September 24, 1997 ("Prospectus") that purportedly failed to disclose that the Company's

actions failed to comply with Chinese Law; (2) Defendants Du Quingsong, Mary Xia, Fan Baiyan, and Li Lianjie ("Individual Defendants"), officers and/or directors of the Company, as controlling persons of the Company with respect to the alleged violations; and (3) Defendants Barington Capital Group, L.P. and Value Investing Partners, Inc. ("Underwriter Defendants"), underwriters of the IPO, as participants in the alleged violations. Presently before this Court are Defendants' motions to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6).

## Background

This matter reaches the Court framed as a Rule 12(b)(6) motion. Accordingly, the facts recited herein are drawn predominantly from Plaintiffs' amended complaint.

### A. Parties:

Plaintiffs are members of the Class who purchased or otherwise acquired Asia Electronics common stock pursuant to or traceable to the Company's September 25, 1997 IPO and were allegedly damaged thereby. *See* Amended Class Action Compl. ("Amended Compl.") at ¶¶ 11, 24. By order signed November 19, 1998, this Court appointed Plaintiffs to serve as lead plaintiffs on behalf of the class. *See* Order of Honorable David N. Edelstein dated Nov. 19, 1998 ("Edelstein Order").

Defendant Asia Electronics is a British Virgin Islands company that incorporated in January 1996 and went public via an IPO on September 25, 1997. *See* Amended Compl. at ¶¶ 2, 12, 15, 17. The Company, through its several China-based subsidiaries, develops and sells deflection yokes—electronic devices attached to color picture tubes in television sets and computer monitors. *See id.* According to the Prospectus, Asia Electronics is one of the largest independents manufacturers of deflection yokes in the world. *See id.* at ¶ 15.

The Individual Defendants, at all times relevant to this action, served as senior officers and/or directors of the Company.

*See id.* at ¶ 13. The Underwriter Defendants, at all times relevant to this action, were engaged in the business of investment banking and underwriting and selling securities to the investing public, and were the lead underwriters of the IPO. *See id.* at ¶ 14.

### B. Facts:

Through the Company's IPO, Asia Electronics sold 4.6 million shares of common stock at $8.00 per share, raising $36.8 million, $34.2 million of which went directly to the Company, the remainder of which went to pay the Underwriter Defendants. *See id.* at 19. Subsequent to the IPO, the Company posted steadily improving financial results and acquired a number of other companies. *See id.* at ¶ 18. By October 22, 1997, the price of Asia Electronics common stock had risen to $14.13 per share. *See id.*

Plaintiffs allege that on July 16, 1998, Asia Electronics then "shocked the market" when it announced in a press release that "its Chairman, defendant Du, was being questioned by the Disciplinary Committee of the Municipal Communist Party in Xianyang, China, where Asia Electronics' operations are conducted." *Id.* at ¶ 29. Plaintiffs observe that on July 16, 1998, on almost eight-times average trading volume, the market price of Asia Electronics common stock declined to $2.88 per share. *See id.* at ¶ 30. Plaintiffs also point to a July 24, 1998 press release through which the Company announced that "the Company's Chief Financial Officer, Li Lei, had also been detained for questioning by the Disciplinary Committee." *Id.* at ¶ 31. Finally, Plaintiffs note that on July 29, 1998, Asia Electronics common stock fell to $1.63 per share, and that at the time of the filing of the amended complaint, the stock traded in the range of $0.50 per share. *See id.* at ¶¶ 33–34.

Plaintiffs assert that the Prospectus was materially false and misleading on several grounds. *See id.* at ¶ 20. Specifically, Plaintiffs claim that the Prospectus was

inaccurate in portraying the Company as being in compliance with all laws, both domestic and international. *See id.* at ¶ 21. In support of their allegations, Plaintiffs point to the following quotes from the Company's Prospectus. *See id.* at ¶¶ 21–23.[1]

First, the Prospectus stated that:

The Chinese legal system is based on written statutes and, unlike common law systems, decided legal cases in China have little precedential value. In 1979, China began the process of developing its legal system by undertaking to promulgate a comprehensive system of laws. On December 29, 1993, the National People's Congress promulgated the Company Law of The People's Republic of China ["PRC"].... Pursuant to the Company Law, the State Council issued the "PRC Special Regulations on Overseas Offering and Listing of Shares by Joint Stock Limited Companies" to regulate joint stock limited companies that offer and list their shares overseas. The Company Law, the rules and regulations promulgated under it and legal prescriptions relating to Chinese companies provide the core of the legal framework governing the corporate behavior of companies, such as the Company's subsidiaries, and their directors and shareholders. Because these laws, regulations and legal requirements are relatively recent, their interpretation and enforcement involve significant uncertainty.

Prospectus at 8–9.

Second, according to the Prospectus:

Certain legal matters will be passed upon for the Company as to U.S. law by Proskauer Rose LLP, New York, New York and as to China law by Jun He Law Office, Beijing, People's Republic of China. The validity of the shares of Common Stock offered by this Prospec-

tus and certain other legal matters are being passed on for the Company by Harney, Westwood & Riegels as to British Virgin Islands law. . Certain legal matters will be passed upon for the Underwriters by Kramer, Levin, Naftalis & Frankel, New York, New York and, with respect to matters of Chinese law, by the Great Wall Law Offices, Shanghai, Peoples's Republic of China.

*Id.* at 59.

Finally, the Prospectus reads:

The PRC's legal system is based on written statutes under which prior court decisions may be cited as authority but do not have binding precedence. The PRC's legal system is relatively new, and the government is still in the process of developing a comprehensive system of laws, a process that has been ongoing sine 1979. Considerable progress has been made in the promulgation of laws and regulations dealing with economic matters such as corporate organization and governance, foreign investment, commerce, taxation and trade. Such legislation has significantly enhanced the protection afforded to foreign investors. However, experience with respect to the implementation, interpretation and enforcement of such laws is limited.

*Id.* at F–7.

Primarily, Plaintiffs claim that when the Company issued these statements they were materially false or misleading because at the time of the IPO: (1) the Company was in violation of Chinese law and policy, (2) the Company lacked the requisite legal authority under Chinese law to sell shares of the Company in the United States, and (3) "Chinese law had not 'significantly' enhanced the protections afforded to foreign investors as the opera-

---

1. After locating these statements in the Prospectus, which is more than 100 pages long, this Court takes these quotations directly from the Prospectus rather than from Plaintiffs' complaint. The amended complaint, in addition to containing several inaccuracies and omissions, surprisingly, or perhaps more curiously, fails to provide citations for these statements or even to annex the Prospectus, which serves as the basis of Plaintiffs' amended complaint, as an exhibit for this Court's review.

tions of Asia Electronics were at all times subject to seizure by the Chinese government or instrumentalities thereof." Amended Compl. at ¶ 24. Plaintiffs also contend that the Prospectus improperly stated that the Company employed a "strategy" for becoming "the largest independent manufacturer of deflection yokes in the world," Prospectus at 4, even though, according to Plaintiffs, the Company was "at risk of having its operations significantly disrupted or curtailed by the Chinese government." *See* Amended Compl. at ¶¶ 25–26. Additionally, Plaintiffs assert that the descriptions in the Prospectus of "Risk Factors" were materially misleading because they failed to disclose that the IPO was illegal under Chinese law. *See id.* at ¶ 27. For example, Plaintiffs cite the following from the Prospectus:

> The Companies conduct their operations in the PRC and accordingly are subject to special considerations and significant risks not typically associated with investments in equity securities of United States and Western European companies. These include the risks associated with, among others, the political, economic, legal environments and foreign currency exchange.

Prospectus at F–21. Plaintiffs claim that this statement did not warn investors of "the true risks facing the Company" because it did not inform them that "the Company lacked the requisite legal authority to issue the shares." Amended Compl. at ¶ 28.

To specifically support their allegation that the company acted in violation of Chinese law, Plaintiffs cite a July 24, 1998 *Washington Post* article stating that:

> According to an official for the party's Propaganda Bureau in Xianyang, Du was detained July 2 because Asia Electronic's [sic] public offering on the Nasdaq Stock Market broke Chinese law. The official, reached by telephone from Beijing, said local investigators launched a probe following a request from China's Stock Exchange Executive Council,

which oversees China's fledgling capital markets.

*Id.* at ¶ 32. Plaintiffs also cite the article's reference to the assertion of an official at the Beijing-based Stock Exchange Executive Council that "it was not clear whether Asia Electronics followed Chinese law when its shares were listed on the Nasdaq in September [1997]." *Id.*

## C. Procedural History

On August 13, 1998, Plaintiffs filed a class action complaint against Defendants in the United States District Court for the Southern District of New York. On October 13, 1998, Plaintiffs filed a motion with this Court requesting consolidation of related actions before other courts in the Southern District of New York, appointment of the members of the Rapoport Group as lead plaintiffs, and approval of the Rapoport Group's choice of law firm as lead counsel. On November 19, 1998, this Court (1) directed plaintiffs in related actions to file for voluntary dismissal without prejudice of these actions and to join in a single amended complaint and (2) granted Plaintiff Rapoport's motions for appointment of lead plaintiffs and lead counsel. *See* Edelstein Order.

Pursuant to this Court's Order, on February 4, 1999, Plaintiffs filed an amended class action complaint against Defendants. The amended complaint asserted the following causes of action: (1) that Defendants violated § 11 of the Securities Act, 15 U.S.C. § 77k(a), *see* Amended Compl. at ¶¶ 43–52; (2) that Defendants violated § 12(a)(2) of the Securities Act, 15 U.S.C. § 77*l*(a)(2), *see* Amended Compl. at ¶¶ 53–61; and (3) that the Individual Defendants violated § 15 of the Securities Act, 15 U.S.C. § 77*o*. *See* Amended Compl. at ¶¶ 62–65. On April 12, 1999, Defendants Asia Electronics and the Underwriter Defendants filed motions to dismiss the amended complaint pursuant to Rule 12(b)(6). Submissions from all parties followed.

### Discussion

This Court now turns to the substance of Plaintiffs' claims and Defendants' motions to dismiss. Before resolving these issues, this Court will first set forth the legal standard that governs the instant opinion.

#### A. Standard of Law

The appropriate legal standard for purposes of this opinion is that which controls a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). In reviewing the pleadings pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein. *See* Fed.R.Civ.P. 12(b)(6); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991); *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991). "[A] district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer,* 937 F.2d at 773; *accord Kopec v. Coughlin III,* 922 F.2d 152, 155–56 (2d Cir.1991); *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). If a court wishes to consider material outside the pleadings, it must convert the motion to dismiss into one for summary judgment under Rule 56. *See Kramer,* 937 F.2d at 773; *Kopec,* 922 F.2d at 155–56; *Fonte,* 848 F.2d at 25.

The Second Circuit has stated that a court's function is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980); *accord Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 124 (2d Cir.1991). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Moreover, in evaluating whether a complaint will withstand a Rule 12(b)(6) motion, a court must assume the truth of plaintiff's "well-pleaded allegations." *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991).

The court should read the complaint generously and draw reasonable inferences in favor of the pleader. *See LaBounty,* 933 F.2d at 123. A court will not dismiss a complaint unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to the relief requested. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991). Nevertheless, while the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice to defeat a defendant's motion to dismiss. *See Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996).

#### B. Plaintiffs' Securities Act Claims

The gravamen of Plaintiffs' claim is that Defendants' IPO violated Chinese law and that the Prospectus failed to disclose the alleged violation. The amended complaint, however, does not allege adequate facts to support either contention.

To state a claim under § 11, a plaintiff must allege that "[a] part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k. Similarly, to argue a claim under § 12(a)(2), a complaint must allege that a defendant offered or sold a security through a prospectus or oral communication "which include[d] an untrue statement of a material fact or omit[ted] to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading."

15 U.S.C. § 77*l*(a)(2). The amended complaint does not satisfy either of these standards.

The amended complaint relies exclusively on statements contained in two documents, a July 24, 1998 *Washington Post* article and the Prospectus. Plaintiffs' decision not to attach either of these documents to the amended complaint puzzles and concerns this Court. This Court must carefully consider both of these documents, as they form the basis of the claim. *See Sazerac Company, Inc. v. Falk*, 861 F.Supp. 253, 257 (S.D.N.Y.1994) (citations omitted) ("In the event that a plaintiff alleges a claim based on a written instrument, as is the case here, the court may consider such an instrument in ruling on a Rule 12(b)(6) motion even if it was not attached to the complaint and made a part thereof. . . ."). If these documents contradict the allegations of the amended complaint, the documents control and this Court need not accept as true the allegations in the amended complaint. *See id.*

Accordingly, this Court has closely examined the substance of the two documents upon which Plaintiffs rely. This Court finds that the documents contradict Plaintiffs' allegations and, therefore, this Court must grant Defendants' motion to dismiss. *See Feick v. Fleener*, 653 F.2d 69, 75 (2d Cir.1981) ("Since the documents upon which appellants based their claim show on their face absence of any grounds for relief, dismissal was proper.").

1. The July 24, 1998 *Washington Post* article

■  Based entirely on a portion of a July 24, 1998 *Washington Post* article, Plaintiffs allege that, by issuing common stock in Asia Electronics, Defendants violated Chinese law. *See* Amended Compl. at ¶ 32. In particular, the amended complaint includes the following excerpt from the article relating to Defendant Du: "According to an official for the party's Propaganda Bureau in Xianyang, Du was detained July 2 because Asia Electronic's public offering on the Nasdaq Stock Market broke Chinese law." *Id.*

Thus, the factual basis of the *Washington Post* article consists mainly of the vague statement of an unnamed Propaganda Bureau official from the local Communist Party. Neither the article nor the amended complaint identifies in any way the specific Chinese law that Defendants violated or the nature of the alleged violation. The Second Circuit recently affirmed dismissal of a civil rights claim for lack of specificity because the plaintiff did not indicate which portion of the Civil Rights Act the defendants allegedly violated. *See Tubner v. West*, No. 97–7151, 162 F.3d 1148, 1998 WL 639291, at *2 (2d Cir. March 27, 1998).

Moreover, when read as a whole, the article itself calls into question and, apparently, contradicts Plaintiffs' contention that Defendants violated Chinese law. *See Salinger v. Projectavision, Inc.*, 972 F.Supp. 222, 226 (S.D.N.Y.1997) ("On a motion to dismiss . . . a court may consider . . . the full text of press releases, magazine articles, analyst's reports, and wire services stories that are referred to or quoted from in the complaint.") (citations omitted). The anonymous Propaganda Bureau official cited in the article claimed to have acted at the request of China's Stock Exchange Executive Council. *See* Amended Compl. at ¶ 32. According to other portions of the article, however, an official from the Stock Exchange Executive Council itself could not confirm any violation of law. *See id.* Instead, as Plaintiffs themselves observe, the official said "it was not clear whether Asia Electronics followed Chinese law when its shares were listed on the Nasdaq in September." *Id.* In addition, the official appeared to deny the suggestion that Defendant Du's detainment was connected to any council finding of an alleged violation of Chinese law, insisting that "the council did not recommend 'causing senior executives to disappear.'" Affidavit of David M. Lederkramer ("Lederkramer Aff.") at Exhib. 1. Finally, the official added that "[t]here are lots of other methods you can take, like increasing their taxes, denying

them the special treatment that is reserved for such firms, or whatever.'" *Id.*

Therefore, the amended complaint does not identify any portion of Chinese law that Defendants have transgressed or even articulate a basic description of how Plaintiffs allegedly committed the violation. Accordingly, based on the vague nature of Plaintiffs' allegations and Plaintiffs' unconvincing reliance on the newspaper article, this Court concludes that Plaintiffs have failed to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6).

### 2. The Prospectus

Even if this Court accepts the adequacy of Plaintiffs' allegations that Defendants violated Chinese law, this Court must dismiss the amended complaint because the Prospectus did not guarantee that there was no such violation. Thus, the Prospectus did not contain a materially false statement or omission under §§ 11 or 12(a)(2) of the Securities Act.

■ Plaintiffs claim that the Prospectus inaccurately portrayed the Company as being in compliance with all domestic and international laws. *See* Amended Compl. at ¶ 21. The Second Circuit has established clear instructions for analyzing a prospectus for a claim brought under §§ 11 or 12 of the Securities Act. *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir.1996). The Second Circuit stated:

> It is undisputed that the prospectus[ ] must be treated as a whole. It is further undisputed that the "central issue ... is not whether the particular statements, taken separately, were literally true, but whether defendants' representations, taken together and in context, would have misl[ed] a reasonable investor about the nature of the [securities]." A prospectus will violate federal securities law if it does not disclose "material objective factual matters," or buries those matters beneath other information, or treats them cavalierly.

*Id.* (citations omitted) (alterations in original).

Therefore, despite Plaintiffs' inexplicable failure to submit a copy of the Prospectus, this Court will not limit its review to those segments of the Prospectus that Plaintiffs cite in the amended complaint. The Second Circuit has clearly established that

> when a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure.

*Cortec*, 949 F.2d at 47. Thus, this Court bases its conclusions on the Prospectus as a whole. *See* Lederkramer Aff. at Exhib. 6.

■ Plaintiffs assert that through various statements in the Prospectus, Defendants guaranteed that the Company conducted the IPO in compliance with Chinese law. *See* Amended Compl. at ¶¶ 21, 23–24, 28; Prospectus at 8–9, 59, F–7, F–21. Having carefully reviewed these excerpts, this Court finds no merit to Plaintiffs' claim that through these statements Defendants assured investors that the IPO conformed with Chinese law. In fact, contrary to Plaintiffs' allegations, these very statements, as well as others in the Prospectus, contain detailed and specific warnings concerning the legal and political risks of investing in Asia Electronics, arising from having its manufacturing operations located in China. *See* Prospectus at 8–9, F–7, F–21. Thus, the statements in the Prospectus "bespeak caution" so that "[n]o reasonable investor would be misled by the [P]rospectus into believing" that the Company guaranteed against legal or political difficulties. *I. Meyer Pincus Assoc. v. Oppenheimer & Co.*, 936 F.2d 759, 763 (2d Cir. 1991) (citations omitted); *accord Olkey*, 98 F.3d at 9 (finding that language in prospectus "fully disclosed the risk of investment and was specific enough to warrant a reasonable investor's attention").

The Prospectus contains numerous and significant examples of such cautionary statements that, in both substance and typeface, highlight the potential risks involved in investing with the Company. For example, pages 8–14 of the Prospectus comprise a section labeled "**RISK FAC-TORS.**" Prospectus at 8 (boldface and capitalization in original). The first page of that section includes a smaller section labeled "*Risks Related to the Legal System of China,*" *id.* (italics in original), which Plaintiffs quote at length in the amended complaint. *See* Amended Compl. at ¶ 21. This section warns that "decided legal cases in China have little precedential value" and that "because [Chinese] laws, regulations and legal requirements are relatively recent, their interpretation and enforcement involve significant uncertainty." Prospectus at 8–9.

Additionally, the Financial Statements included in the Prospectus contain further warnings of the potential legal and political risks stemming from the Company's operations in China. The first section of the notes to the Consolidated Financial Statements is labeled "**1. ORGANIZATION AND PRINCIPAL ACTIVITIES[,]**" Prospectus at F–7 (boldface and capitalization in original). That section, which is also quoted in the amended complaint, *see* Amended Compl. at ¶ 28, cautions that because the Company's operations are conducted in the PRC, they "are subject to special considerations and significant risks not typically associated with investments in equity securities of United States and Western European companies. These include risks associated with, among others, the political, economic, legal environments and foreign currency exchange. These risks are described further in the following paragraphs[.]" Prospectus at F–7; *see also id.* at F–21.

The very first paragraph of that section, which is absent from the amended complaint, is labeled "a. *Political Environment,*" and warns that the Company's production "may be adversely affected by changes in the political and social conditions in the PRC and by, among other things, changes in governmental policies with respect to laws and regulations." Prospectus at F–7 (italics in original). The third paragraph, "c. *Legal Environment,*" *id.* (italics in original), which Plaintiffs cite but insist is inadequate, *see* Amended Compl. at ¶¶ 23–24, issues explicit warnings that:

> The PRC's legal system is relatively new, and the government is still in the process of developing a comprehensive system of laws.... Considerable progress has been made in the promulgation of laws and regulations dealing with economic matters such as corporate organization and governance, foreign investment, commerce, taxation and trade. Such legalization has significantly enhanced the protection afforded to foreign investors. However, experience with respect to the implementation, interpretation and enforcement of such laws is limited.

Prospectus at F–7.

Thus, Defendants "could not guarantee and did not guarantee, as Plaintiffs contend," that legal or political events in the PRC would not affect the Company's operations. *Lasker v. New York State Elec. & Gas Corp.,* 85 F.3d 55, 58 (2d Cir.1996). "The only reasonable interpretation of the [Prospectus] language was that the Company would attempt to" conform with the relevant Chinese law. *Id.* The relevant statements from the Prospectus "merely indicate[d] the Company's intention to avoid" legal obstacles. *Id.* They were "not a guarantee." *Id.*

Therefore, "[r]eading the Prospectus as a whole and taking the challenged statements in context, the challenged statements ... were surrounded by express cautionary language." *Schoenhaut v. American Sensors, Inc.,* 986 F.Supp. 785, 793 (S.D.N.Y.1997) (citation omitted). The challenged statements themselves "alert[ ] investors that the Company could not and did not guarantee" against legal attacks by the Chinese government, and indeed, these statements "specifically warn[ ] that" such

a development is possible. *Id.; see Crystal v. Foy,* 562 F.Supp. 422, 427 (S.D.N.Y. 1983) ("[T]he very document [plaintiff] relies upon negates the charge of fraudulent concealment."); *see also In re TCW/DW North Am. Gov't Income Trust Sec. Litig.,* 941 F.Supp. 326, 337 (S.D.N.Y.1996) (noting that "prospectus did disclose ... various risk factors regarding investing in Mexican government debt securities"; finding that "based upon these disclosures, the level of risk associated with investing in Mexican debt securities was adequately disclosed in the prospectus" and that "Plaintiffs' complaint identifies no misstatements or omission in the prospectus which a reasonable investor would find important in making an investment decision"; and concluding that "[t]herefore, any misstatements or omissions are immaterial as a matter of law"); *In re AES Corp. Sec. Litig.,* 825 F.Supp. 578, 588 (S.D.N.Y.1993) (finding that company "could not have known, and need not have disclosed, that local officials ... would ... derail the project;" that company "disclosed the general political risks;" that "when defendants warn investors of a potential risk, they need not predict the precise manner in which the risks will manifest themselves;" and concluding that "[t]herefore, plaintiffs have not alleged any material misrepresentations").

Having read the *Washington Post* article and the Prospectus carefully and closely, this Court dismisses the first two actions as to all Defendants, for failure to state a claim. Because this Court dismisses the causes of action under §§ 11 and 12(a)(2) of the Securities Act, consideration of a "controlling persons" liability claim under § 15, 15 U.S.C. § 77o, is unnecessary. Therefore, this Court also dismisses the third cause of action. *See Hinerfeld v.*

*United Auto Group,* No. 97 Civ. 3533, 1998 WL 397852, at *8 (S.D.N.Y. July 15, 1998).

## C. Leave to Amend

Finally, Plaintiffs have requested leave to amend further the amended complaint in the event that this Court grants Defendants' motion to dismiss. *See* Plaintiffs' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss dated June 28, 1999, at 25. This Court acknowledges that Rule 15(a) provides that permission to amend a pleading "should be freely given when justice so requires." Fed.R.Civ.P. 15(a). Nevertheless, it is within the sound discretion of the district court whether to grant leave to amend. *See United Auto Group,* 1998 WL 397852, at *8 (citing *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

In particular, leave to amend may be denied if the amendment would be futile. *See In re Am. Express Co. Shareholder Litig.,* 39 F.3d 395, 402 (2d Cir.1994) (citing *Foman,* 371 U.S. at 182, 83 S.Ct. 227). This Court finds that "insofar as all of the claims contained in the [a]mended [c]omplaint are belied by the plain language of the [P]rospectus, it would be an exercise in futility as well as a waste of judicial resources to allow further amendment." *United Auto Group,* 1998 WL 397852, at *8.[2]

## Conclusion

This Court has carefully reviewed the factual allegations in the amended complaint and the relevant case law. This Court finds that Plaintiffs have failed to allege sufficiently claims for violations of the Securities Act against Defendants. Thus,

---

**2.** Defendants argue that Plaintiffs' claims fail to satisfy Rule 11 pleading standards. *See* Fed.R.Civ.P. 11; Memorandum of Law of Asia Electronics in Supp. of its Mot. to Dismiss dated April 12, 1999, at 16–18. Although this Court dismisses Plaintiffs' claims, along a continuum of reasonableness, Plaintiffs' allegations are not so devoid of merit as to violate Rule 11. *See* Fed.R.Civ.P. 11; *see also* Samuel J. Levine, *Seeking a Common Language for the Application of Rule 11 Sanctions: What is "Frivolous"?,* 78 Neb. L.Rev. 677 (1999).

IT IS HEREBY ORDERED THAT Defendants' motions to dismiss the amended complaint are GRANTED, and Plaintiffs' complaint is DISMISSED with prejudice.

IT IS FURTHER ORDERED THAT Plaintiffs' request to amend the amended complaint is DENIED.

SO ORDERED.