**In re CIT GROUP, INC. SECURITIES LITIGATION**

**THIS ORDER RELATES TO: ALL ACTIONS**

No. 03 Civ. 02471(JES).

United States District Court, S.D. New York.

Dec. 21, 2004.

Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY (Sanford P. Dumain, Benjamin Y. Kaufman, Jeffrey T. Spinazzola, of counsel), for Lead Plaintiffs.

Law Offices of Lawrence G. Soicher, New York, NY (Lawrence G. Soicher, of counsel), Cohen, Milstein, Hausfeld & Toll, PLLC, New York, NY (Catherine A. Torell, of counsel), Bernstein, Liebhard & Lifshitz, LLP, New York, NY (Sandy A. Liebhard, of counsel), Rabin Murray & Frank, New York, NY (Marvin L. Frank, of counsel), Weiss & Yourman, New York, NY (Joseph H. Weiss, of counsel,) for plaintiffs.

Fried, Frank, Harris, Shriver & Jacobson, New York, NY (Douglas H. Flaum, Brett D. Jaffe, of counsel), for Defendants CIT Group, Inc., Albert R. Gamper, Jr., and Joseph M. Leone.

Cleary, Gottlieb, Steen & Hamilton, New York, NY (Max Gitter, Jennifer L. Kroman, of counsel), for Defendants Goldman Sachs & Co., Lehman Brothers Inc., and Salomon Smith Barney Inc.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiffs, members of the class of individuals who purchased CIT Group, Inc. ("CIT") common stock in or traceable to CIT's July 1, 2002 initial public offering ("IPO"), bring this action to recover for materially misleading statements made in

CIT's registration statement and prospectus. Plaintiffs seek recovery pursuant to sections 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77*l*, 77o. Defendants, CIT, Albert Gamper, Jr., and Joseph Leone ("defendants"), bring this motion to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the Court grants defendants' motion.

## BACKGROUND

On July 1, 2002, CIT, a global finance company, launched an IPO that resulted in the issuance of 211.6 million shares and the generation of over $4.8 billion. Consolidated and Amended Class Action Complaint ("Compl.") ¶¶ 17, 20–21. In connection with that IPO, CIT prepared, and filed with the SEC, a registration statement and prospectus. *Id.* ¶ 18. Defendants Gamper, Jr., and Leone, who were among other things CIT's Chief Executive Officer and Chief Financial Officer, respectively, signed that registration statement. *Id.* ¶¶ 8–9.

Along with other information, the registration statement and incorporated prospectus identified risk factors that could negatively impact CIT and the value of its stock. *Id.* ¶ 26. One such factor was the risk of under-performance in the company's telecommunications portfolio. *Id.* To guard against such risks, CIT represented that, as of March 31, 2002, it maintained consolidated reserves for credit losses in the amount of $554.9 million. *Id.* ¶ 31. CIT declared that this reserve level had been "reviewed for adequacy." *Id.* With regard specifically to the risk in the telecommunications portfolio, the registration statement and prospectus stated, *"We believe that our loan loss reserves relating to the telecommunications portfolio are adequate.* However, *continued deterioration* in the sector could result in losses beyond current reserve levels." *Id.* ¶ 26 (alteration in original).

On July 23, 2002, three weeks after the IPO, CIT issued a press release that announced its results for the quarter ending June 30, 2002. *Id.* ¶ 22. In that release CIT indicated that it was taking an additional $200 million loan loss charge in order to strengthen its telecommunications loan loss reserves.[2] *Id.* Plaintiffs allege that, at the time of the IPO, defendants were aware that this step would need to be taken. *Id.* ¶ 28. CIT common stock closed at $17.53 per share on April 10, 2003, the date that the initial complaint was filed in this action. *Id.* ¶ 56. The IPO price was $23 per share. *Id.*

Six class action complaints were filed and, pursuant to a June 23, 2003 order, this Court consolidated these separate actions into this action and appointed Glickenhaus & Co. as lead plaintiff. Plaintiffs contend that the statements above regarding the telecommunications loan loss reserves and the consolidated loan loss reserves were untrue statements of material fact that are actionable under sections 11,

---

1. One of the consolidated actions also names John F. Fort, III, Mark H. Swartz, J. Brad McGee, Goldman, Sachs & Co., Lehman Brothers Inc., and Salomon Smith Barney Inc. as defendants. Those defendants were not named in the Consolidated Amended Class Action Complaint and apparently were not served.

2. CIT also announced a $40 million charge to strengthen its Argentine loan loss reserves. Compl. ¶ 22. Given that plaintiffs' claims regarding misstatements about the Argentine portfolio are identical, but weaker, than those in connection with the telecommunications portfolio, this Court will primarily discuss the telecommunications issue.

12(a)(2), and 15 of the Securities Act.[3] *Id.* ¶ 18.

## DISCUSSION

In considering a motion to dismiss, a court must accept all of the allegations set forth in the complaint as true, and must draw all reasonable inferences in favor of the plaintiffs. *Rombach v. Chang,* 355 F.3d 164, 169 (2d Cir.2004); *Halperin v. eBanker USA.com, Inc.,* 295 F.3d 352, 356 (2d Cir.2002). Dismissal is appropriate only when it is clear that the plaintiffs can prove no set of facts "in support of their claims that would entitle them to relief." *Halperin,* 295 F.3d at 356. In addition to the complaint, the court may consider those documents that are incorporated into the complaint by reference. *Rombach,* 355 F.3d at 169; *Hinerfeld v. United Auto Group,* No. 97 Civ. 3533, 1998 WL 397852, at *4, 1998 U.S. Dist. LEXIS 10601, at *11 (S.D.N.Y. July 15, 1998).

Here, plaintiffs allege that statements concerning CIT's loan loss reserves made in the registration statement and prospectus violate sections 11, 12(a)(2), and 15 of the Securities Act.

Section 11 creates a cause of action for purchasers of securities against issuers, underwriters, signatories, and directors for registration statements that "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). As to issuers the provision "imposes a form of strict liability," such that plaintiffs need only show that the misstatements or omissions were material

in order to state a claim. *Greenapple v. Detroit Edison Co.,* 618 F.2d 198, 203 & n. 9 (2d Cir.1980); *see also Herman & MacLean v. Huddleston,* 459 U.S. 375, 381–82, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). *But see Rombach,* 355 F.3d at 171 (stating that plaintiffs "need allege no more than negligence to proceed" under sections 11 and 12(a)(2)).

Section 12 creates liability as against those who "sell[ ] a security ... by means of a prospectus or oral communication" that contains material misstatements or omissions. 15 U.S.C. § 77*l* (a)(2). Section 15 simply imposes derivative liability against those who control section 11 or 12 violators. *Id.* § 77o; *Hinerfeld,* 1998 WL 397852, at *4 n. 4, 1998 U.S. Dist. LEXIS 10601, at *12 n. 4.

Statements will be deemed materially misleading when " 'the defendants' representations, taken together and in context, would have misled a reasonable investor.' " *Rombach,* 355 F.3d at 172 n. 7 (quoting *I. Meyer Pincus & Assocs. v. Oppenheimer & Co.,* 936 F.2d 759, 761 (2d Cir.1991)). Under this standard the prospectus must be read as a whole to determine if any misstatements "would have misled a reasonable investor about the nature of the [securities]," *Olkey v. Hyperion 1999 Term Trust, Inc.,* 98 F.3d 2, 5 (2d Cir.1996) (quoting *McMahan & Co. v. Wherehouse Entertainment, Inc.,* 900 F.2d 576, 579 (2d Cir.1990)), and individual statements should not be parsed to determine if each was "literally true," *id.*

Here, plaintiffs point to two statements in the registration statement and prospectus that they claim are materially mislead-

---

**3.** Plaintiffs also argue that these misstatements resulted in an overstatement of assets and an understatement of risks in violation of Generally Accepted Accounting Principles. Compl. ¶ 18. As defendants point out, however, these alleged GAAP violations are com-

pletely dependent upon the underlying statements at issue here. Defs.' Mem. at 20. Since this Court finds no material misstatements, it therefore need not address further the alleged GAAP violations.

ing. Compl. ¶¶ 18, 32. Plaintiffs advance several theories as to the misleading nature of these statements. *Id.*

■ Plaintiffs first point to CIT's statement that "[w]e believe that our loan loss reserves relating to the telecommunications portfolio are adequate." Jaffe Decl., Ex. C, at 10, Prospectus ("Prospectus"). Plaintiffs contend that this is a material misstatement because CIT did not have loan loss reserves that were devoted solely and explicitly to the telecommunications portfolio. Compl. ¶ 32; Pls.' Mem. at 6.

This Court cannot agree. The statement, even read in complete isolation, does not state that CIT had reserves that were separately maintained as "telecommunications loan loss reserves." Rather, the clear import of the statement was that among the loan loss reserves that the company did have, an ample amount could be devoted to the telecommunications portfolio so as to offset any probable losses. In fact, on the same page as the allegedly misleading statement, CIT stated in its prospectus, "We maintain a *consolidated reserve for credit losses on finance receivables. Our consolidated reserve for credit losses* reflects management's judgment of losses inherent in the portfolio." Prospectus at 10 (emphasis added). Therefore, the allegedly misleading statement, taken together with the balance of the prospectus, would not have misled a reasonable investor. *See, e.g., Lasker v. New York State Elec. & Gas Corp.*, 85 F.3d 55, 58–59 (2d Cir.1996).

■ Plaintiffs next point to the above statement about the adequacy of the telecommunications reserves along with those in which CIT stated that its consolidated loan loss reserves had been "reviewed for adequacy." Prospectus at 10–11, 32; Compl. ¶¶ 18–19, 32. Plaintiffs contend that these statements are actionable because CIT's loan loss reserves were not, in fact, adequate. Compl. ¶¶ 18, 32; Pls.' Mem. at 9–10. Plaintiffs argue that CIT's augmentation of its loan loss reserves three weeks subsequent to the IPO is evidence of their inadequacy. Pls.' Mem. at 2–3.

This Court disagrees. Although these misstatements may be actionable under the theory that defendants did not actually believe them to be true or had no reasonable basis for such a conclusion, *In re Int'l Bus. Machs. Corporate Sec. Litig.*, 163 F.3d 102, 107 (2d Cir.1998); *Hinerfeld*, 1998 WL 397852, at *7, n. 9, 1998 U.S. Dist. LEXIS 10601, at *22 n. 9, they would not be actionable under the securities laws if they simply represented a failure on the part of defendants to correctly gauge the adequacy of the loan loss reserves, *Hinerfeld*, 1998 WL 397852, at **6–7, 1998 U.S. Dist. LEXIS 10601, at *21–22 ("The failure to anticipate the extent of necessary reserves, even if it amounts to mismanagement, is not actionable under federal securities laws."); *see also Olkey*, 98 F.3d at 7–8 (stating that claim which amounted to an allegation that defendants were less skillful at balancing the portfolio than plaintiffs would have liked was not actionable under the securities laws); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 281 (3d Cir.1992) ("[M]ere failure to provide adequate reserves ... does not implicate the concerns of the federal securities laws and is not normally actionable."), unless they were worded so as to create guarantees on the part of defendants, *In re Int'l Bus. Machs.*, 163 F.3d at 107; *Friedman v. Mohasco Corp.*, 929 F.2d 77, 79 (2d Cir. 1991); *Milman v. Box Hill Sys. Corp.*, 72 F.Supp.2d 220, 234 (S.D.N.Y.1999).

Here, plaintiffs' claim that loan loss reserves were inadequate is nothing more than an assertion that CIT was incorrect or unskillful in determining exactly what amount of reserves would be adequate.

That this statement could be actionable is even further undercut by the context in which the statement was made. The prospectus stated:

> The consolidated reserve for credit losses is intended to provide for losses inherent in the portfolio, which requires the application of estimates and significant judgment....We cannot be certain that our consolidated reserve for credit losses will be adequate over time to cover credit losses in our portfolio.... [I]f our reserves for credit losses are not adequate, our business, financial condition and results of operations may suffer.

Prospectus at 11. Defendants clearly stated the risk associated with any unskillfulness on their part and they clearly indicated that they did not guarantee that loan loss reserves would be adequate over time. Therefore, this statement is not actionable under this theory. *See Olkey*, 98 F.3d at 7–8; *Milman*, 72 F.Supp.2d at 234.

■ Plaintiffs' final allegation is that these statements were materially misleading because defendants knew when they made these statements that they were not true.[4] Compl. ¶¶ 19, 28. As stated *supra*, statements about defendants' belief in the adequacy of loan loss reserves could be actionable if it is alleged that defendants did not actually believe that loan loss reserves were adequate, or if defendants had no reasonable factual basis for their belief. *See Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1092–93, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991); *Shapiro*, 964 F.2d at 282; *Milman*, 72 F.Supp.2d at 234.

Here, plaintiffs argue that defendants could not have actually believed that loan loss reserves were adequate, Compl. ¶¶ 19, 23, because defendants decided to increase loan loss reserves just three weeks after the IPO,[5] Compl. ¶ 22; Pls.' Mem. at 23–24. Plaintiffs provide no additional facts from which to infer that defendants did not believe that reserves were adequate or had no reasonable basis for such a belief.

That defendants later decided to revise the amount of loan loss reserves that it deemed adequate provides absolutely no reasonable basis for concluding that defendants did not think reserves were ade-

---

4. Defendants contend that the gravamen of this argument sounds in fraud and therefore the pleading requirements of Fed.R.Civ.P. 9(b) should apply. Defs.' Mem. at 12–13. The Second Circuit has recently held that, even though section 11 causes of action do not require proof of fraud, plaintiffs whose complaints sound in fraud will need to conform to the more stringent pleading requirements of Rule 9(b). *Rombach*, 355 F.3d at 167. The *Rombach* Court indicated that courts should analyze the conduct that was alleged to have taken place, rather than the words used by plaintiffs, in determining whether the claim sounds in fraud. *Id.* at 171. In this case, plaintiffs repeatedly state that their causes of action are not premised on fraud. Compl. ¶¶ 59, 67, 74. Although this Court thinks that an allegation that defendants reported that loan loss reserves were adequate despite "already kn[owing] at the time of filing ... that the Company did not have adequate reserves," Compl. ¶ 28, un-

questionably sounds in fraud and therefore implicates Rule 9(b), this Court relies on other bases for dismissal of this action.

5. Plaintiffs also make the unmeritorious argument that CIT's Form 10–K, filed on February 26, 2003, proves that defendants did not believe that reserves were adequate because that filing indicates, "In light of the continued deterioration in the telecommunications sector, [CIT] added $200 million to reserve for credit losses *during* the quarter ended 6/30/02." Compl. ¶ 23 (alteration in original); Jaffe Decl., Ex. E, Form 10–K. According to plaintiffs, this "unmistakably shows that the Company decided to increase its telecommunications reserve *during* the quarter ending June 30, 2002 and prior to the IPO on July 1, 2002." Compl. ¶ 23. Clearly the statement in the Form 10–K does not make such an assertion.

quate at the time the registration statement and prospectus became effective.[6] *See Denny v. Barber,* 576 F.2d 465, 470 (2d Cir.1978) (dismissing Rule 10b–5 claim in which plaintiff simply pointed to later disclosures as evidence of misstatements in the original disclosures); *Milman,* 72 F.Supp.2d at 234 (dismissing section 11 claim where no facts alleged that defendants did not believe prediction or had reason to doubt its truth); *Hinerfeld,* 1998 WL 397852, at \*6, 1998 U.S. Dist. LEXIS 10601, at \*21 (dismissing section 11 claim where allegations that defendants knew or should have known that reserves were inadequate were "conclusory and unsupported by additional factual allegations").

Plaintiffs also completely fail to plead any facts from which it could be inferred that defendants' belief in the adequacy of the reserves was beyond the pale of reason. In fact, the statements that plaintiffs rely on completely belie this inference. In the registration statement and prospectus defendants stated that they believed that loan loss reserves for telecommunications were adequate, but they also acknowledged a "substantial decline" in the industry and indicated an understanding that "continued deterioration in the sector could result in losses beyond current reserve levels." Prospectus at 10. Given the absence of any facts to show that defendants did not believe, or have a reasonable basis to believe, that the reserves were adequate, this Court cannot simply draw an inference based upon mere speculation that this was the case. *See In re Time Warner Inc. Sec. Litig.,* 9 F.3d 259, 266 (2d Cir.1993) (finding statements of opinion not actionable where "the com-

plaint contains no allegations to support the inference ... that the favorable opinions were without a basis in fact"); *Hinerfeld,* 1998 WL 397852, at \*6, 1998 U.S. Dist. LEXIS 10601, at \*21.

■ Besides finding that plaintiffs have failed to allege any misstatements in the registration statement and prospectus, this Court also dismisses this Complaint on the ground that the alleged misstatements, taken in the context of the registration statement and prospectus as a whole, were " 'so obviously unimportant ... that reasonable minds could not differ on the question of [their] importance.' " *I. Meyer Pincus & Assocs. v. Oppenheimer & Co., Inc.,* 936 F.2d 759, 763 (2d Cir.1991) (quoting *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985)). This Court finds that, given the extensive cautionary language that surrounded the statements, Prospectus at 10, the explanation that the chosen level of reserves was the product of "estimates and significant judgment," Prospectus at 11, and the relative unimportance of an additional $240 million charge to loss reserves in a company with over $27 billion in receivables, Prospectus at 5, the statements would not have misled a reasonable investor about the nature of the securities offered. *Olkey,* 98 F.3d at 5; *In re Allied Capital Corp. Sec. Litig.,* No. 02 Civ. 3812, 2003 WL 1964184, at \*5, 2003 U.S. Dist. LEXIS 6962, at \*16–17 (S.D.N.Y. Apr. 25, 2003) (finding that no reasonable investor would have found misstatements in estimates that overvalued holdings in $237 million worth of assets material in a company that had $2.3 billion in assets).

Because the Court finds that none of the statements complained of were materially

---

**6.** Such a finding is consistent with public policy. To infer that defendants did not actually believe these statements simply because they undertook subsequent remedial measures would do nothing but dissuade restatements and corrections of financial data. *Cf.*

Fed.R.Evid. 407 (excluding evidence of subsequent remedial measures to prove negligence or other culpable conduct); *Greenapple,* 618 F.2d at 211 ("[T]he advisability of revision does not render what was done deceptive or misleading.").

misleading, plaintiffs have failed to state actionable claims under sections 11 and 12(a)(2) of the Securities Act. It therefore follows that no cause of action has been stated under section 15. *See, e.g., Hinerfeld,* 1998 WL 397852, at *8, 1998 U.S. Dist. LEXIS 10601, at *24.

Pursuant to this Court's obligation under 15 U.S.C. § 77z–1(c)(1), this Court finds that all parties and attorneys have complied with the requirements of Rule 11(b) of the Federal Rules of Civil Procedure.

### CONCLUSION

Based on the foregoing, defendants' motion to dismiss plaintiffs' Complaint shall be and hereby is granted. The Court directs the Clerk of the Court to enter judgment dismissing the Complaint as against defendants CIT, Gamper, Jr., and Leone. A Pre–Trial Conference shall occur on January 31, 2005 at 3:00 p.m. in Courtroom 705, 40 Centre Street to determine the status of this action as against remaining defendants.

**It is SO ORDERED.**