UNITED STATES, Appellee,

v.

Troy UPHAM, Defendant, Appellant.

No. 98–1121.

United States Court of Appeals,
First Circuit.

Heard Dec. 11, 1998.

Decided Feb. 12, 1999.

**533**

Donald R. Furman, Jr., on brief for appellant.

F. Mark Terison, Assistant United States Attorney, with whom Jay P. McClosky, United States Attorney, and Gail Fisk Malone, Assistant United States Attorney, were on brief for appellee.

Before BOUDIN, LYNCH, and LIPEZ, Circuit Judges.

BOUDIN, Circuit Judge.

In February 1997, U.S. Customs agents who were monitoring a "chat room" on the Internet, while engaged in an undercover investigation, received in Buffalo, New York a number of images depicting child pornography. Records of the Internet service provider showed that the computer from which the images had been sent was owned by Kathi Morrissey at an address in Costigan, Maine. Acting pursuant to a warrant, the agents conducted a search of Morrissey's home on March 21, 1997.

Among the items seized and taken from the house were Morrissey's computer and a number of diskettes. Using a computer utilities program and the "undelete" function, the government was able to recover from the computer's hard disk and the diskettes some 1,400 previously deleted images of minors engaged in sexually explicit conduct. These images included the relatively small number of images that the agents had received in Buffalo in February 1997 from Morrissey's computer.

Further investigation revealed that from about September 1996 until March 1997, the inhabitants of Morrissey's house included Morrissey, her two young children and her then-boyfriend Troy Upham. Later evidence, including admissions from Upham, showed that Upham was the principal user of the computer and that child pornography had been sent and received by him over the Internet on a regular basis. Upham left Morrissey's home for Canada in mid-March 1997. In May 1997, he was indicted by a federal grand jury, and he returned from Canada to face trial.

As set forth in a superceding indictment, the grand jury charged Upham with four counts of transporting in interstate com-

merce computer graphic images of minors engaged in sexually explicit conduct, the production of which involved the use of minors engaged in such conduct; each count related to transmissions on a different date in February 1997. *See* 18 U.S.C. § 2252(a)(1). The fifth count charged Upham with possession, on "a date uncertain" but between about February 7, 1997, and March 21, 1997, of the 1,400 images of minors engaged in sexually explicit conduct, the production of which involved the use of minors engaged in such conduct. *See* 18 U.S.C. § 2252(a)(4)(B).

Asserting numerous grounds, Upham filed a motion to suppress evidence derived from the search of Morrissey's home. On August 11, 1997, the district court conducted an evidentiary hearing on the motion. The district court denied the motion, and the images derived from the search—recaptured from their deleted state—were later admitted at trial. We defer for the moment a description of the grounds now advanced by Upham to justify suppression and the government's responses to those claims.

Upham was tried by a jury in a three-day trial conducted in September 1997. The government provided evidence as to the images received in Buffalo from Morrissey's computer and of those recovered from the computer hard drive and disks seized in the search. It also offered evidence connecting Upham with the transmission and receipt of the images. Finally, a doctor testified for the government to provide medical evidence as to the ages of the children depicted in the images.

Upham testified at trial in his own defense but did not deny sending and receiving child pornography over the Internet. Instead, Upham argued that he had been sexually abused as a child and that his exchanges of such images on the Internet with other "chat room" participants were done in connection with his preparation of a serious book relating to child abuse. He said that he had written a small number of pages, albeit over a very long period, as part of this project.

The jury convicted Upham on all five counts. The jury was given a separate interrogatory to be answered if it convicted on one or more counts: "Was the defendant's sole purpose in committing the offense or offenses to produce a serious literary work?" The jury answered in the negative. In due course, Upham was sentenced to 78 months in prison, the minimum provided by the Sentencing Guidelines for the offenses in light of Upham's prior criminal history.

Upham now appeals, raising a wide range of issues in a brief submitted by counsel and in a supplement prepared by Upham himself. Of these, the only one requiring full discussion is Upham's multi-part claim that the motion to suppress should have granted. In particular, Upham says that the warrant was too broad and that its scope was exceeded when the government recovered from the hard drive and diskettes the images that had previously been deleted.

At the outset, the government objects that Upham had no standing to challenge the search. This is so, it says, because Upham has now conceded that he broke up with Morrissey and moved out on March 13, 1997, before the search occurred, and he therefore lacked any privacy interest in the premises. *See Rakas v. Illinois*, 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The government concedes that it did not make this argument in the district court. Quite possibly, it did not then have what it now regards as a clear admission from Upham, namely, that when he moved to Canada, he did not intend to return to Morrissey's house.

■ Although the government has waived the standing argument, nothing prevents us from considering it if we choose to do so, always assuming this would not be unfair to Upham. *Cf. United States v. Pervaz*, 118 F.3d 1, 4 (1st Cir.1997). In this case we think it would not be fair. Despite some evidence of the break-up, the record is not so clear as to prevent Upham from arguing (and indeed testifying) that he planned to return or had some other residual link to the property. The proper place to settle such issues was the suppression hearing.

Upham's first challenge to the warrant in this court is that it was generic in its description of what was to be seized and did not satisfy the supposed tests for such a warrant. The warrant itself attached, and incorporated by reference, the list of materials to be

seized that had been included in the application for the warrant. The first two items on the list—the only ones directly pertinent here—were as follows:

Any and all computer software and hardware, ... computer disks, disk drives....

Any and all visual depictions, in any format or media, of minors engaging in sexually explicit conduct [as defined by the statute].

The government says that neither paragraph is defective. The government also says that Upham's attack on the warrant as too general was not made in the motion to suppress and that Upham is therefore limited to plain error on this issue. The government appears to be right as to waiver, but since we think there was no error at all, we prefer to address the matter in these terms in order to give guidance on what may be a recurring issue.

■ The question whether a warrant is sufficiently "particular" has been much litigated with seemingly disparate results. *See* Twenty–Sixth Annual Review of Criminal Procedure, 85 *Geo. L.J.* 821, 836–38 & nn. 75–78 (1997)(collecting cases). The root is the Fourth Amendment's direction that a warrant describe "particularly" the place to be searched and "the persons or things to be seized." U.S. Const. amend IV. The requirement of particularity arises out of a hostility to the Crown's practice of issuing "general warrants" taken to authorize the wholesale rummaging through a person's property in search of contraband or evidence. *See Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

The cases on "particularity" are actually concerned with at least two rather different problems: one is whether the warrant supplies enough information to guide and control the agent's judgment in selecting what to take, *see United States v. Abrams*, 615 F.2d 541, 545–46 (1st Cir.1980); and the other is whether the category as specified is too broad in the sense that it includes items that should not be seized, *see United States v. Kow*, 58 F.3d 423, 427 (9th Cir.1995). *See also Davis v. Gracey*, 111 F.3d 1472, 1478–79 (10th Cir.1997) (discussing both problems). Unfortunately, making a warrant more objective may also make it broader, and vice versa.

■ Upham's main attack is on the first paragraph, allowing the seizure of computer equipment, which he describes as "generic." Although Upham relies principally on *United States v. Klein*, 565 F.2d 183, 188 (1st Cir. 1977), that case was concerned with whether a warrant was imprecise because it permitted unduly subjective judgments. Here, the first paragraph is easily administered based on objective criteria (*i.e.*, whether the items seized are computer equipment). The problem is not imprecision but arguable overbreadth.

As a practical matter, the seizure and subsequent off-premises search of the computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images. A sufficient chance of finding some needles in the computer haystack was established by the probable-cause showing in the warrant application; and a search of a computer and co-located disks is not inherently more intrusive than the physical search of an entire house for a weapon or drugs. We conclude, as did the Ninth Circuit in somewhat similar circumstances, *see United States v. Lacy*, 119 F.3d 742, 746–47 (9th Cir.1997), that the first paragraph was not unconstitutionally overbroad.

Of course, if the images themselves could have been easily obtained through an on-site inspection, there might have been no justification for allowing the seizure of *all* computer equipment, a category potentially including equipment that contained no images and had no connection to the crime. But it is no easy task to search a well-laden hard drive by going through all of the information it contains, let alone to search through it and the disks for information that may have been "deleted." The record shows that the mechanics of the search for images later performed off site could not readily have been done on the spot.

The government argues, in the alternative, that the second paragraph, allowing seizure of the unlawful images, *alone* justifies the seizure of the equipment regardless of the first paragraph. Upham claims that the sec-

ond paragraph is also not "particular" enough but does so by misquoting the paragraph and his objection is unpersuasive.[1] Our concern with the government's alternative argument is a different one, which we note without seeking to resolve the difficult problems thus posed.

There is no doubt that a warrant that contained only the second paragraph would permit an on-site search of any "container" that might reasonably have the images concealed "inside"—including the computer and any disks. *See United States v. Ross*, 456 U.S. 798, 820–22, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *United States v. Giannetta*, 909 F.2d 571, 577 (1st Cir.1990). However, there is some division in the case law as to whether and when the police may seize and remove from the premises items that are not named in the warrant merely in the reasonable hope that a search of those items later on will lead to recovery of the items that are named.[2] Certainly, there might be legitimate doubt whether a warrant authorizing a search of a house for a murder weapon would permit the police to cart off the entire contents of the house, including the refrigerator, for purposes of a later search.

This problem arises in a variety of different contexts and in many permutations; matters of degree are involved and there is probably no single rule that resolves all such situations. In this instance, it is unnecessary to decide whether removal of the computer equipment could be justified solely by the second paragraph since the first paragraph clearly authorized the seizure of the equipment, allowing it to be taken off site. Whether the subsequent off-site search for the images presented any problem is the subject to which we next turn.

■ Upham's second major claim of error is that the recovery of previously deleted information on the hard drive and diskettes was outside the scope of the warrant. It is settled law that the search and seizure conducted under a warrant must conform to the warrant, *see Marron v. United States*, 275 U.S. 192, 196–97, 48 S.Ct. 74, 72 L.Ed. 231 (1927), or some well-recognized exception. *E.g., Horton v. California*, 496 U.S. 128, 130, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *United States v. Robles*, 45 F.3d 1, 6–7 (1st Cir.), *cert. denied*, 514 U.S. 1043, 115 S.Ct. 1416, 131 L.Ed.2d 300 (1995) (plain view seizures). Here, Upham's argument is two-fold: that the warrant did not authorize a search of the computer at all, and that it did not authorize the undeleting of previously deleted information.

■ The first branch of the argument is hopeless. The warrant explicitly authorized the seizure of both the computer plus diskettes and the unlawful images. The images—we ignore the deletion question for the moment—were "inside" the computer or diskettes. The extraction of unlawful images from within the computer and diskettes was therefore contemplated by the warrant. *See, e.g., State v. Petrone*, 161 Wis.2d 530, 468 N.W.2d 676, 681 (Wis.1991) (permitting development of undeveloped film seized pursuant to a warrant without requiring additional warrant); *State v. Warren*, 309 N.C. 224, 306 S.E.2d 446, 449 (1983) (permitting lab processing of bloodstains gathered in a lawful search without additional warrant).

1. He treats the paragraph as if it authorized the seizure of *any* image and ignores the qualifying language limiting the seizure to images "of minors engaging in sexually explicit conduct." Such language has been held to leave "little latitude" to the executing officers and to be sufficiently particular to satisfy the Fourth Amendment. *See, e.g., United States v. Kimbrough*, 69 F.3d 723, 727–28 (5th Cir.1995); *United States v. Peden*, 891 F.2d 514, 517 (5th Cir.1989); *United States v. Hurt*, 808 F.2d 707, 707 (9th Cir.1987).

2. *Compare United States v. Hargus*, 128 F.3d 1358, 1363 (10th Cir.1997) (seizure of entire file cabinet including intermixed warrant-specified and unspecified documents permissible); *United States v. Schandl*, 947 F.2d 462, 465–66 (11th Cir.1991) (same); *United States v. Shilling*, 826 F.2d 1365, 1369–70 (4th Cir.1987) (same); *United States v. Johnson*, 709 F.2d 515, 516 (8th Cir.1983) (subsequent off-site search of safe did not require owner's consent when safe could properly be searched on-site), *with United States v. Tamura*, 694 F.2d 591, 595–96 (9th Cir.1982) (subsequent search of intermixed warrant-specified and unspecified documents that were seized wholesale requires further approval of magistrate).

██ The other and more serious branch of the argument is a challenge to the recovery of deleted material.[3] On the diskettes, the government recovered the images simply by using the undelete function of the computer. However, the hard disk had been reformatted by Upham on March 8, 1997, a process that erases some of the indexing code that allows undeleting to be done quickly. But until the deleted information is actually overwritten by new information, the old information can often be recovered by a specialized utility program, which is what the government did in this case.

The seizure of unlawful images is within the plain language of the warrant; their recovery, after attempted destruction, is no different than decoding a coded message lawfully seized or pasting together scraps of a torn-up ransom note. *See Commonwealth v. Copenhefer,* 526 Pa. 555, 587 A.2d 1353, 1356 (1991); *cf. Petrone,* 468 N.W.2d at 681. The March 21 warrant did not prescribe methods of recovery or tests to be performed, but warrants rarely do so. The warrant process is primarily concerned with identifying *what* may be searched or seized—not how—and *whether* there is sufficient cause for the invasion of privacy thus entailed.

██ We turn now, and briefly, to a quite different subject. Upham has a pair of related arguments, one addressed to the sufficiency of the evidence and the other to the jury instructions. Both build upon the assertion that Upham could not properly be convicted for knowing possession of unlawful images that he believed to have been deleted from the computer and diskettes and may not have known could be recovered.

██ Upham did not present these issues to the trial court. He did move for a judgment of acquittal but did not raise this request or objection. And he did make objections to the instructions but not the one now pressed. Sufficiency of the evidence objections are waived, if not made below, except where necessary to avoid "clear and gross"

injustice, *see United States v. Greenleaf,* 692 F.2d 182, 185 (1st Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983); and failure to object or make a proper request at the instruction stage is fatal except for plain error. *See United States v. Campbell,* 874 F.2d 838, 841 (1st Cir.1989).

In this case, we are satisfied that the alleged errors now complained of had no effect on the verdict and thus fail the plain error test. *See United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The evidence showed overwhelmingly that Upham knowingly transmitted, received and possessed unlawful images prior to their attempted deletion; the recaptured images were perfectly competent evidence of crimes committed before their deletion. Conviction did not depend on the question (which we do not decide) of whether it would be unlawful standing alone to possess, with the requisite knowledge, a hard drive or diskettes with deleted (but recapturable) images.

██ Finally, in challenging his sentence, Upham objects that the district judge refused to afford Upham a downward adjustment for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. Upham is aware that the adjustment is rarely allowed where the defendant declines to plead guilty, *see id.* app. note 2, but he says that in this case he did not contest possession and insisted on trial only to present his "First Amendment" defense.

"Acceptance of responsibility" is not abstractly defined by the guidelines. Instead, the concept is refined by a series of comments, *see* U.S.S.G. § 3E1.1, app. notes 1–6. One comment ties the reduction pretty closely to guilty pleas, saying only "rare[ly]" will the adjustment be granted to one who insists on trial and adding that even a guilty plea does not assure the reduction. *See id.* app. note 2. Still, the same comment says that even a defendant who insists on trial "may"

---

**3.** We reject the government's suggestion that, by deleting the images, Upham "abandoned" them and surrendered his right of privacy. Analogy is a hallowed tool of legal reasoning; but to compare deletion to putting one's trash on the street where it can be searched by every passer-by, *see California v. Greenwood,* 486 U.S. 35, 40, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988); *United States v. Scott,* 975 F.2d 927, 930 (1st Cir.1992), is to reason by false analogy.

show acceptance in rare cases, and it illustrates the point:

> This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).

*Id.*

Arguably, the main thrust of Upham's defense at trial was his claim that he had possessed child pornography in order to write a book about it. And it may be that going to trial solely to present this alleged defense falls within the spirit, if not the letter, of the guideline comment just quoted. But the comment does little more than remove one barrier to the adjustment. The surrounding language in the comment, and the purpose of affording the adjustment, confirm that it still remains for the defendant to show affirmatively that he did "accept responsibility" for his offense. *See also* U.S.S.G. § 3E1.1(a); *United States v. Lombard,* 72 F.3d 170, 187 (1st Cir.1995).

Here, the district judge ruled that the *factual* premise of the defense was untrue, pointing to the jury's finding that Upham's conduct had not been prompted solely by literary ambition. This ruling is not "clearly erroneous," the normal standard of review. *See United States v. Ocasio-Rivera,* 991 F.2d 1, 4 (1st Cir.1993). Indeed, the evidence strongly points to the conclusion that, however tangled Upham's motivations may have been, sexual gratification was a central aim of his actions. Over many years of purported book writing, Upham had written only a few pages of this supposed work.

It may be a bit of an oversimplification to say (after Freud) that Upham must have been consciously lying at trial about his own motives. But a defendant who presents false testimony at trial, in an effort to minimize his culpability, is hardly in a position to insist that the judge grant him a reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1 app. note 1(a). In all events, the district court in this case did not exceed the "great deference" accorded the sentencing judge in evaluating claims of acceptance of responsibility. *Id.* app. note 5.

Other claims presented on Upham's behalf have been considered (*e.g.*, a claim that the district court erred in finding one or more of the images were sadomasochistic and so warranted an upward adjustment), but do not require separate discussion. The penalty is obviously severe but this is due in part to upward adjustments, like that just mentioned, and significant prior criminal history, including a prior child-pornography conviction under state law.

*Affirmed.*