# United States Court of Appeals
## For the First Circuit

No. 99-1902

UNITED STATES OF AMERICA,

Appellee,

v.

RAFAEL ALGARIN DE JESUS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Hector M. Laffitte, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Lydia Lizarribar-Masini for appellant.
Jeanette Mercado Rios, Assistant United States Attorney,
with whom Guillermo Gil, United States Attorney, and Jorge E.
Vega-Pacheco, Assistant United States Attorney, Chief, Criminal
Division, were on brief for appellee.

May 2, 2000

**COFFIN, <u>Senior Circuit Judge</u>**.  Defendant appellant, a correctional officer employed by the Federal Bureau of Prisons at the Metropolitan Detention Center in Guaynabo, Puerto Rico, was convicted after a jury trial of engaging in a sexual act with an inmate, in violation of 18 U.S.C. § 2243(b).  The trial centered on testimony of the female inmate that, while she was in segregated custody in the Center's Special Housing Unit, defendant on several occasions had her submit to oral copulation.  She had managed to save some of the sperm in a pill bottle, which was ultimately given to the FBI for DNA testing.

The major issue in this appeal is whether the district court abused its discretion in denying defendant's motion, filed on the first day of trial, for funds under the Criminal Justice Act, 18 U.S.C. § 3006A(e)(1), to hire a DNA expert to assist the defense.  Other issues involve evidentiary and sentencing rulings.  After close scrutiny of the motion history, we affirm.

We note that the specific motion for funds that triggered the ruling at issue was the last event in a history of motions and responses which does credit to neither side.  We find the government's record of less than forthcoming response to defendant's repeated requests to be unintentional, however,

and conclude that defendant bears responsibility for lack of focused assertion of rights at critical times.

On October 13, 1998, defendant filed a motion under Fed. R. Crim. P. 16, asking for any statements of defendant, reports of tests, and, specifically referencing Rule 16(a)(1)(E), a written summary of any expert opinion with bases and reasons therefor.[1]  The motion was granted on October 16.

On October 20, defendant received from the government a four page report.  The first page was entitled "Re: Receipt of DNA Analysis Results."  It reported that FBI Examiner Baechtel had examined two semen samples and blood samples of a number of correctional officers and inmates; that one semen sample lacked enough DNA to show a DNA profile; that the other sample revealed DNA contributed by more than one person, and that the blood samples of defendant and another officer did not exclude them as potential contributors to the second DNA sample.  It also noted that Baechtel explained that these results "were not as detail

---

[1]  Since 1993, Fed. R. Crim. P. 16(a)(1)(E) has read in part:

> (E) Expert Witnesses.  At the defendant's request, the government shall disclose to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial.

[sic] as would be his court testimony on the results of his findings."

There was added a brief discussion of two tests performed on the second sample showing that defendant's DNA pattern, though less detectible than his fellow officer's, "could be picked up slightly in the sample." Other pages listed the items examined, gave instructions for storing returned processed DNA samples, and reported Baechtel's findings concerning the extremely low probability of finding someone in the general Black, Caucasian, or Hispanic populations who could have been a contributor to the examined sample.

Not content with this, defendant filed, on October 28, a request for complete reports and any expert testimony to be presented by the government. The motion was granted on October 30. On November 2, the government filed responses to a number of discovery motions. Its response to the two requests noted above was simply, "The requested information has been made available in the discovery previously provided on October 20, 1998."

On December 22, defendant filed a "motion in limine," referring in part to the Rule 16 motions, asserting that they had not been complied with, and requesting that any evidence of tests and expert testimony be excluded from the trial. On

January 8, 1999, the government responded, saying only that defendant was in error in asserting that it had not complied with the early requests.

This response, predictably, led to a motion filed February 11, 1999, entitled, "Urgent Motion Requesting Remedy." It rehearsed the familiar history, specifying the failure to supply a written summary of any expert opinion as well as test results, and requested that the government comply with the court's orders within five days or be barred from using DNA evidence and testimony.

Nothing happened for almost three weeks. Then, on February 22, defendant's counsel drafted the motion for funds that was filed, fifteen days later, on the first day of trial. A pre-trial conference was held on February 23. We do not know what, if any, mention was made of the motion for funds for a DNA expert for the defense. What we do know is that on the same day the court gave "further consideration" to defendant's "urgent motion" and ordered the government to provide defendant with a written summary of FBI Examiner Baechtel's testimony "forthwith."

In the face of this deliberate command, and against this background, one would have thought that the government would have complied without delay or at least recorded its

serious efforts.  One would also have thought that, armed with this weapon, defendant would have wasted no time in invoking sanctions for delay.  Instead, we face only silence on this issue for the next two weeks ending with the first day of trial. On that day, March 9, 1999, defendant no longer sought to suppress evidence and testimony as sanctions for failure of compliance, but rather, in a reversal of approach, requested his own expert.  If the request had been  granted, the recruitment of an expert, familiarizing such expert with the record, enabling new tests to be conducted and the resulting consultations with defendant's attorney would necessarily have involved substantial delay.

What the district court faced on March 9, after attempting to give defendant maximum timely assistance, was the ex parte motion drafted two weeks earlier.  It recited that defendant  had retained counsel for $6,000, had no further resources, was indigent, and that a financial statement was being prepared.  It also stated that "due to special circumstances of the [DNA] evidence, it has become necessary to dispute the same."  It then cited the Criminal Justice Act and requested an unspecified amount  "for an investigator and an expert witness in DNA."

In reviewing the court's denial of the motion, we are mindful of the fact that the burden is on the movant to demonstrate the necessity of the expert services for an adequate defense, see United States v. Mateos-Sanchez, 864 F.2d 232, 240 (1st Cir. 1989), and that we may reverse only for abuse of discretion, see United States v. Manning, 79 F.3d 212, 218 (1st Cir. 1996). Moreover, a request must be made in a timely manner. See Moore v. Kemp, 809 F.2d 702, 710 (11th Cir. 1987)(en banc). In this case, it is clear that the court was well within the bounds of its discretion. The very first hurdle, eligibility for Criminal Justice Act funds, was not even approached. Although the motion had been prepared days before, and had referred to the preparation of an eligibility document, no financial analysis of defendant's economic circumstances was ever, so far as we know, presented. Substantive justifications were similarly lacking. There was no indication of the availability or identification of an appropriate expert or any estimate of the expert's fee and expenses. There was no enlightenment as to why an investigator was needed in addition to an expert witness. Not least, there was no explanation of where and why the assistance of an expert was needed.

In oral argument, counsel stated that only on the opening day of trial did she receive a complete summary and

only then did she realize the complexity of the DNA issues. But there is nothing in the filed motion to reflect this fact. And this is somewhat inconsistent with defendant's brief, where he charges that "the prosecution never provided complete disclosure" and that certain DNA testing results were only "shown to counsel by Mr. Baechtel during trial recess" — which would have been the third day of trial, March 15. Both sides agree that further materials were made available to defendant but disagree as to the time. All of this becomes academic, however, since nothing is of record.

We wind down on this issue, unhappily concluding that (1) the defendant early on was assiduous in pursuing materials, particularly a written summary of expert testimony, to which he was entitled; (2) the government blindly, blandly, wrongly, and repeatedly claimed to have been in full compliance; (3) the court, when it realized the fact of noncompliance, did its best to empower defendant to get what he wanted; (4) defendant, after issuance of the court's order to the government to comply "forthwith," rested on his oars; and (5) after adopting a last minute change of strategy from suppression to obtaining his own expert, defendant confronted the court with a deeply flawed motion for funds. In sum, we find no abuse of discretion in the court's decision.

The remaining issues merit only brief discussion. The first is a claim that the court committed error in allowing a corrections officer to testify that a policy contained in a publication, Standards of Employee Conduct, prohibited corrections officers from "personal communications, sharing one's personal life" with inmates. Counsel had objected on the grounds that appellant was not on trial for misconduct and that proof of any such misconduct would have required notice of "other crimes, wrongs, or acts" in advance of trial under Rule 404(b) of the Rules of Evidence.

We fail to see any basis for the argument. In the first place, both the Standards and the fact that appellant had acknowledged them had already been admitted into evidence without objection. This was the only evidence alluded to in the closing argument of the prosecutor. In the second place, one of the standards read into evidence without objection was a prohibition of engagement in sexual conduct with an inmate, the very conduct stimulating this prosecution. Objecting to this would be much the same as a reckless driving defendant's objecting to evidence that, while driving recklessly, he had also exceeded a speed limit. To the extent the reference concerned the bar against personal communications, such preliminary interaction between appellant and an inmate was

clearly, as the court ruled, part and parcel of the entire transaction, necessary both to place conduct in context and to shed light on appellant's state of mind.

Appellant's remaining argument is that the court erred in refusing to depart downward in recognition of aberrant behavior, since he was a first offender and his course of conduct constituted only one crime. See United States v. Grandmaison, 77 F.3d 555, 560-61 (1st Cir. 1996). If the court's refusal was in the exercise of its discretion, we have no jurisdiction. See United States v. Aker, 181 F.3d 167, 173 (1st Cir. 1999).

In this case the court said it was not "inclined to depart," reflecting that appellant's conduct was "planned, was done for a certain amount of time," and constituted an abuse of authority over a person in a vulnerable position. It also noted the absence of any sign of remorse or repentance.

Appellant's argument rests on the proposition that the court's decision was based on an erroneous view of the law. It was not. Although we have taken the position in Grandmaison that aberrant behavior is not limited to spontaneous or thoughtless acts, see 77 F.3d at 563, we noted that spontaneity and thoughtlessness are among the factors to be considered in assessing the totality of circumstances. So, we add, are their

absence.  The court properly considered the deliberateness and duration of appellant's conduct,  particularly in a position of grossly unbalanced power as between a corrections officer and an inmate.

The court's decision being an exercise of discretion within its authority, we are powerless to review.

The judgment is therefore AFFIRMED.