**UNITED STATES of America,**

v.

**Christopher ALBERT, Defendant.**

**No. CR.A. 01–40001–NMG.**

United States District Court,
D. Massachusetts.

Jan. 18, 2002.

John G. Swomley, Swomley & Wood, Boston, for Christopher Albert, Defendants.

John T. McNeil, United States Attorney's Office, Boston, for U.S. Attorneys.

## MEMORANDUM AND ORDER

GORTON, District Judge.

The defendant, Christopher Albert, was indicted for possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B), and criminal forfeiture under 18 U.S.C. § 2253(a). Pending before this court are defendant's 1) motion to suppress the evidence seized on April 19, 2000 and for an evidentiary hearing (Docket No. 24), 2) motion to dismiss the indictment as unconstitutional (Docket No. 39), and 3) ex parte motion for funds for employment of a forensic computer expert (Docket No. 33).

### I. *Background*

On March 24, 2000, an undercover Postal Inspector, Richard J. Irvine, accepted an order to purchase a videotape containing child pornography along with $35 from a man named Christopher Jones. Based on that order, the inspector obtained a search warrant for Jones' home in Grafton, MA and executed the warrant on April 4, 2000 during the controlled delivery of the videotape.

During the execution of the warrant, Jones revealed incriminating information regarding the defendant, Christopher Albert ("Albert"). Jones stated that he met

and communicated with Albert over the internet and that he visited Albert at his home in Leominster, MA on four occasions. On three of those occasions, Albert showed Jones images of child pornography that were stored on the hard drive of his computer. In either November or December of 1999, Albert allegedly visited Jones' residence bringing with him a CD–ROM containing images of child pornography. Albert downloaded roughly 1,500 images of child pornography to Jones' computer from the CD–ROM.

Based on the information offered by Jones, Postal Inspector Irvine obtained a search warrant for the defendant's home on April 19, 2000. Attached to the warrant were Irvine's affidavit supporting a finding of probable cause and a list of property to be seized entitled "Schedule A." The warrant explicitly mentioned Irvine's affidavit on its face but contained no reference to Schedule A.

Schedule A listed the following items to be seized:

1) a computer(s) and all related computer equipment, peripherals, related instructions in the form of manuals and notes, as well as the software utilized to operate such a computer;

2) computer storage devices, such as hard disks, CD's, diskettes, tapes, laser disks, and Bernoulli disks;

3) the following documents containing references to or relating to child pornography or communications with or about minors: correspondence (including electronic), notes, papers, ledgers, personal telephone and address books, memoranda, telexes, facsimiles, photographs and other depictions of children;

4) telephone and toll records and Internet billing and use records;

5) photographs, negatives, photographic slides, video tapes, magazines, graphic image files, computer generated images, or other visual depictions of child pornography.

Two hours after obtaining the warrant on April 19, 2000, federal and state agents executed it on Albert's first-floor apartment. They searched the first floor, the basement, and, with Albert's consent, the detached garage. The authorities seized, *inter alia*, Albert's computer, CD–ROM's, disks, videotapes, a photo album, a calendar and some children's clothing.

Subsequently, on January 3, 2001, the defendant was indicted for possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B), and criminal forfeiture under 18 U.S.C. § 2253(a).

## II. Defendant's Motion to Suppress the Evidence

The defendant seeks to suppress the evidence seized from his home on April 19, 2000 on the grounds that 1) the warrant on its face fails the particularity requirement of the Fourth Amendment and that defect is uncured by the warrant application and affidavit, 2) the affidavit in support of the warrant lacks probable cause, 3) the seizure and the off-site search of the computer and the CD–ROM's were not authorized by the warrant on its face and 4) the search exceeded the probable cause established by the warrant application and affidavit.

### A. Whether the Warrant is Sufficiently Particular

The defendant argues that the warrant fails the particularity requirement of the Fourth Amendment because 1) the description of the items on the face of the warrant is not sufficiently particular, 2) the

warrant fails to describe the criminal offense(s) to which the items are connected, 3) the attached description of the items to be seized is not referenced on the face of the warrant, and 4) even if the attached list were deemed incorporated in the warrant, it does not describe the items with sufficient particularity.

■ The Fourth Amendment requires that all warrants particularly describe the items to be seized in order to prevent the wholesale rummaging of a person's property in search of contraband. *United States v. Upham*, 168 F.3d 532, 535 (1st Cir.1999). Under the particularity requirement "as to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *United States v. Guarino*, 729 F.2d 864, 867 (1st Cir.1984) (quoting *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927)).

■ The particularity requirement serves two purposes: 1) it limits the discretion of the officer executing the warrant and 2) it informs the person subject to the search and seizure what the officers are entitled to take. *United States v. Scott*, 83 F.Supp.2d 187, 198 (D.Mass.2000).

### 1. Failure to Reference Expressly the List of Items to be Seized on the Face of the Warrant

The face of the warrant contains a constitutionally insufficient description of the property to be seized because it neither limits the discretion of the executing officers nor provides notice to the defendant of which items the agents are authorized to take. It merely describes:

property that constitutes evidence of the commission of a criminal offense, contraband, fruits of crime and things otherwise criminally possessed, as well as property designed and intended for use,

and that has been used, as a means of committing a criminal offense.

A more particular description of the property was listed on the single page of Schedule A that was attached to the warrant during its execution and was labeled by the same case number as the warrant. The face of the warrant, however, did not incorporate by reference the attached Schedule A.

The defendant argues that the warrant does not describe the items to be seized with sufficient particularity because it does not expressly incorporate the attached Schedule A. In support of his argument, he cites *United States v. Klein*, 565 F.2d 183 (1st Cir.1977) and *United States v. Falon*, 959 F.2d 1143 (1st Cir.1992) in which the Court of Appeals for the First Circuit established that:

An affidavit may be referred to for purposes of providing particularity if the affidavit accompanies the warrant *and* the warrant uses suitable words of reference which incorporate the affidavit.

565 F.2d 183, 186 n. 3 (1st Cir.1977). Both *Klein* and *Falon*, however, are distinguishable from this case. In those cases, the government attempted to cure the generality of the warrant by arguing that the affidavit that was used to obtain the warrant provided particularity of the items to be seized. *See Falon*, 959 F.2d at 1145; *Klein*, 565 F.2d at 186. The First Circuit stated in both cases that in order to provide particularity, an affidavit must accompany the warrant and the warrant must incorporate the affidavit by reference. *Falon*, 959 F.2d at 1146; *Klein*, 565 F.2d at 186.

Here, the issue is not whether the affidavit in support of the warrant can be used to cure the generality of the warrant, but whether a list of items attached to the warrant (which provides sufficient particu-

larity as explained below) was sufficiently incorporated on the face of the warrant.

■ Schedule A was attached to the face of the warrant when it was submitted to and issued by the magistrate judge and more importantly, Schedule A was attached to the warrant when it was presented to the defendant upon its execution. Moreover, both the one-page warrant and the one-page Schedule A were labeled by the same case number. The agents were clearly guided by Schedule A when they conducted the search and the defendant was given notice of the items the agents were entitled to take. The inadvertent omission of reference to Schedule A was a clerical error that posed no real risk to legitimate privacy interests. *United States v. Cunningham*, 113 F.3d 289 (1st Cir.1997) (upholding a warrant which was intended to authorize the interception of oral communication even though the language of the warrant used the terms "oral communication" and "wire communication" interchangeably on the basis that the judge and executing officer knew what interceptions had been authorized and there was thus no substantial threat that the officer would intercept other kinds of communications); *United States v. Bonner*, 808 F.2d 864 (1st Cir.1986) (upholding a warrant that failed to include the address of the home to be searched on the basis that, because the home was otherwise described accurately and in detail in the warrant's supporting affidavit, "there was no reasonable likelihood that another premises might be mistakenly searched").

■ Even if the clerical error rendered the warrant invalid, the agents who conducted the search relied on the warrant in good faith. Evidence seized by officers who rely reasonably on a warrant issued by a detached and neutral magistrate should not be excluded. *United States v. Leon*, 468 U.S. 897, 913, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The purpose of the exclusionary rule is to deter police misconduct rather than to punish the errors of judges and magistrates. *Id.* at 916.

In *Massachusetts v. Sheppard*, the Supreme Court applied the good faith exception to facts similar to those presented here. *See* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). In *Sheppard*, a detective sought a search warrant to search the home of a suspected murderer. *Id.* at 984, 104 S.Ct. 3424. The detective could only find a warrant form designed for searches for controlled substances. *Id.* at 985, 104 S.Ct. 3424. In attempting to convert the form to conform to the search for evidence of a homicide, he neglected to omit all of the references to controlled substances. The detective took the warrant form to the home of a judge who examined it and signed and dated it. The Judge also neglected to delete all of the references to controlled substances and neglected to alter the form to incorporate the affidavit. *Id.*

The Supreme Court held that the search fell within the good faith exception to the exclusionary rule because the officers took every step that could reasonably be expected of them. *Sheppard*, 468 U.S. at 989, 104 S.Ct. 3424. The detective presented his affidavit to a neutral and detached magistrate who concluded that it established probable cause to conduct the search. He then observed the judge make some changes to the warrant and received the warrant and the affidavit. The Court concluded that he subsequently acted reasonably in relying on the warrant and conducting the search. *Id.*

The Court found that, although an error had been made in the issuance of the warrant, it was the judge who made the critical mistake in failing to recognize the error when he reviewed and authorized the warrant. *Id.* at 990, 104 S.Ct. 3424. "The

exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges." *Id.*

As in *Sheppard,* the agents here believed that the search they conducted was authorized by a valid warrant and they acted reasonably in executing the search. Postal Inspector Richard Irvine prepared an application and affidavit for a search warrant including a draft warrant and a list of items to be seized entitled "Schedule A." On April 19, 2000, those documents were presented to United States Magistrate Judge Charles B. Swartwood who determined that they established probable cause. Judge Swartwood signed the draft warrant to which Schedule A was attached. The face of the warrant neglected to expressly incorporate Schedule A by reference.

Two hours after receiving the signed warrant from the Court on April 19, 2000, Postal Inspector Irvine and other federal and state agents executed the warrant to which Schedule A was attached. The defendant was present when the search began and was presented with a copy of the warrant with Schedule A attached. The agents limited their search to those items listed on Schedule A.

■ As reflected in the facts, the officers acted in good faith reliance on a warrant issued by a detached and neutral magistrate who found that probable cause had been established. Although Postal Inspector Irvine created the clerical error when he drafted the warrant, it is the judge's responsibility in issuing the warrant to ensure that the warrant does not contain errors. *Sheppard,* 468 U.S. at 990, 104 S.Ct. 3424. An officer is not required to disregard a judge's conclusion that a warrant is valid and constitutional. *Id.*

### 2. Particularity of Schedule A

The defendant argues that even if Schedule A is incorporated in the warrant, the property descriptions in Schedule A are overly broad.

■ To determine whether the warrant is sufficiently particular, a court must consider whether the warrant supplies enough information to guide and control the agent's judgment in deciding what items to take and whether the category of items to be seized includes items that should not be seized. *Scott,* 83 F.Supp.2d at 198–99.

In *United States v. Upham,* the First Circuit Court of Appeals upheld a similar warrant in an analogous case. *Id.* 168 F.3d 532 (1st Cir.1999). There, United States customs agents who were monitoring a chat room on the Internet received several images of child pornography. *Id.* at 533. The agents traced the materials to a home in Maine where the defendant resided. *Id.* The agents conducted a search of the home pursuant to a warrant which listed materials to be seized including:

> any and all computer software and hardware, computer disks, disk drives...and any and all visual depictions, in any format or media, of minors engaging in sexually explicit conduct.

*Id.* at 535.

The First Circuit found that the description was sufficiently particular because the seizure of the "computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images..." *Id.* at 535. It also found that:

> A sufficient chance of finding some needles in the computer haystack was established by the probable cause showing in the warrant application.

*Id.*

■ As in *Upham,* the warrant's authorization of the search and seizure of the computer and all of its related disks, soft-

ware and storage devices was sufficiently particular and narrow. The affidavit supported probable cause to believe that the defendant's computer contained more than a thousand images of child pornography and that images of child pornography were stored in other places in the defendant's apartment. The affidavit specifically stated that:

Albert showed Jones images containing child pornography which Albert had on the hard drive of his computer and on CD's. Jones said Albert lives with his parents and keeps his collection of child pornography with his computer in his bedroom.

The search and seizure of the computer and its related storage equipment was the only practical way to obtain the images. With respect to the visual images and documents, the descriptions of those items are sufficiently particular because they are limited to those items relating to child pornography.

■ With respect to "communications with or about minors," the description of those items are sufficiently particular and supported by probable cause because they relate to the defendant's state of mind in possessing the images of child pornography and transporting the images in interstate commerce.

■ Finally, the defendant provides no support for his assertions that paragraphs 3, 4 and 5 allow the seizure of records from a time in which the government has no legitimate interest. The possession of child pornography is an ongoing offense and any visual images of child pornography possessed by the defendant is evidence of a current crime.

### 3. Lack of Description of the Criminal Offense to which the Items are Connected

■ The Fourth Amendment's particularity requirement does not require a warrant to specify the criminal offense to which the objects of the search are related. The defendant inaccurately cites *In re Application of Lafayette Academy,* 610 F.2d 1 (1st Cir.1979), in support of his argument that a warrant must name with particularity the criminal offense for violation of which the search is being conducted.

That case simply held that where a warrant is framed as to allow the seizure of almost every book or paper located at a premises, such an unconstitutional generality may be cured by a reference to a specific crime for which the evidence is sought. The decision in *Lafayette Academy* does not require the specification of a criminal offense in a case where, as here, the warrant does not authorize general rummaging of a person's property. The particularity requirement of the Fourth Amendment mandates simply that the warrant describe the items to be seized and the place to be searched with sufficient particularity.

### B. Probable Cause

■ The defendant argues, in the alternative, that the warrant is invalid and unconstitutional because it was not supported by probable cause. He argues that the affidavit did not establish probable cause to seize alleged child pornography because 1) the information was too stale to support a belief that child pornography would be on the premises when the search was carried out and 2) there was no indication that the images the defendant possessed in his home had ever moved on the Internet or otherwise in interstate commerce.

### 1. Staleness

The defendant argues that the information used to obtain the search warrant in

April of 2000 was stale because the informant had severed ties with the defendant in December of 1999. In determining whether probable cause exists to support a search warrant, the task of the issuing judge is:

> simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit...there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*United States v. Brunette,* 256 F.3d 14, 16 (1st Cir.2001) (quoting *Illinois v. Gates,* 462 U.S. 213, 268, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Where the information used to obtain a search warrant

> points to illegal activity of a continuous nature, the passage of several months between the observations in the affidavit and the issuance of the warrant will not render the information stale.

*United States v. Jewell,* 60 F.3d 20, 23 (1st Cir.1995).

The First Circuit Court of Appeals has not yet addressed the issue of staleness in the context of child pornography cases. In *United States v. Harvey,* the Court of Appeals for the Third Circuit found a search warrant to be valid where delivery of pornographic materials to the suspect's resident occurred between two and fifteen months before the execution of the search warrant. *Harvey,* 2 F.3d 1318, 1322 (3rd Cir.1992). The Third Circuit stated that age alone does not determine staleness, but that the nature of the crime and the kind of evidence are also factors to consider in determining the staleness of the affidavit in support of the search warrant. *Id.*

In *Harvey,* the warrant application contained evidence that the defendant established a post office box where he received mailings from organizations known to deal in child pornography on dates ranging from two months to fifteen months prior to the issuance of the warrant. The application also stated that, based on the applicant's experience, pedophiles rarely dispose of sexually explicit materials. *Id* at 1323. The Court concluded that the information in the warrant application supported a finding that pornographic materials would be at the defendant's residence at the time of the search. *Id. See also United States v. Hay,* 231 F.3d 630, 636 (9th Cir.2000) (upholding validity of warrant where the warrant application was executed six months after defendant transmitted images of child pornography); *United States v. Horn,* 187 F.3d 781, 787 (8th Cir.1999) (evidence of interest in child pornography was not stale even though it was dated three months before the issuance of a search warrant).

This Court concurs with the reasoning of the above Courts of Appeals and finds that the information contained in the warrant affidavit was not stale. The affidavit supports a finding of probable cause that Albert maintained a "deep and continuing interest" in his collection of child pornography and that he "traded regularly." *Horn,* 187 F.3d at 787.

The Affidavit states that a reliable informant, Christopher Jones, told federal agents that Albert had a continuing interest in child pornography. Jones maintained a relationship with Albert beginning in the summer of 1998, corresponded with him over the internet on about 20 occasions and met Albert in person at his home on four other occasions. Jones informed agents that Albert gave Jones a CD containing 1,500 images of child pornography. Jones also stated that he viewed images of child pornography on Albert's home computer which were stored on compact disks. In addition, Albert boasted to Jones that he has had sexual intercourse with minors

and that his sexual interest in children began in 1995.

Albert was convicted in January, 1999 of contributing to the delinquency of a minor, in May, 1996 for disseminating pornography to a minor and indecent exposure, and in September, 1995 on three counts of indecent assault and battery of a child under 14. The affiant states in the Affidavit that, based on his three years of training and experience investigating child pornography cases, collectors of child pornography rarely destroy correspondence with other collectors and almost always possess their materials in a private location such as their residences.

Based on the information in the Affidavit, it was reasonable for the magistrate judge to find that there existed a reasonable probability that child pornography would be at Albert's residence at the time of the search.

### 2. Evidence of Movement in Interstate Commerce

The defendant also argues that the affidavit failed to establish probable cause that the crime of possessing images of a minor engaging in sexually explicit conduct shipped in interstate commerce occurred because it lacked evidence that his pornographic materials ever moved in interstate commerce.

As stated above, the First Circuit Court of Appeals has adopted a totality of the circumstances approach to assessing probable cause and held that:

> In order to establish probable cause, the facts presented to the magistrate need only 'warrant a man of reasonable caution' to believe that evidence of a crime will be found. Moreover the "probable cause standard does not demand showing that such a belief be correct or more likely true than false."

*United States v. Scott,* 83 F.Supp.2d 187, 190 (D.Mass.2000) (quoting *United States v. Feliz,* 182 F.3d 82, 86 (1st Cir.1999).

■■■ The transmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce. *United States v. Carroll,* 105 F.3d 740, 742 (1st Cir.1997).

The affidavit established that the defendant stored images containing child pornography on his home computer and compact disks. It also established, through the informant Jones, that the defendant communicated through the internet regarding his sexual interest in young boys. Given the large number of pornographic images contained on the defendant's computer and the informant's statement that the defendant communicated over the internet regarding child pornography, there was sufficient evidence to support a "common sense belief" that the defendant possessed images of child pornography that had been shipped in interstate commerce. *Scott,* 83 F.Supp.2d at 195.

### C. Seizure and Off–Site Search of Computer and CDs

The defendant objects that the seizure and off-site search of the computer and other electronic data repositories was not authorized by the warrant.

In *Upham,* the First Circuit upheld the off-site search of a computer. *Id.* 168 F.3d 532 (1st Cir.1999). As stated above, the customs agents in that case conducted a search of a home pursuant to a warrant which listed materials to be seized including "any and all computer software and hardware, computer disks, disk drives . . ." *Id.* at 535. The agents seized a computer and a number of diskettes and were able to recover 1,400 previously deleted images of child pornography during an off-site search. *Id.* at 533.

■ The First Circuit upheld the off-site search of the computer and computer disks finding that "it was about the narrowest definable search and seizure reasonably likely to obtain the images." *Id.* at 535. As in *Upham,* here the mechanics of searching a hard drive by viewing all of the information it contains cannot readily be accomplished on site. The off-site search was therefore appropriate and constitutional.

## D. Whether the Search Exceeded Probable Cause

The defendant argues that the seizure of the following items exceeded the probable cause established: 1) ten VCR tapes, 2) two pairs of children's pants, 3) bag containing children's bathing suits, 4) answering machine tape, 5) audio tapes labeled "Potterfield," 6) Hewlett Packard CD recorder, 7) reel of video tape, 8) one boy calendar, 9) 52 video tapes, 10) five VCR tapes, 11) one container with 18 Commodore backup tapes, and 12) one Commodore computer cassette unit.

■ The remedy in the case of a seizure that is too broad "is not blanket suppression but partial suppression." *Falon,* 959 F.2d at 1149. The only items that exceed the scope of the description in Attachment A are the pairs of children's pants, the bag containing children's bathing suits and the boy calendar.

■ Nothing described in Schedule A can be interpreted to include children's clothing. Moreover, such clothing does not constitute evidence of a crime in plain view. Law enforcement officers may seize evidence in plain view during a lawful search even though the evidence is not described in the warrant. *United States v. Robles,* 45 F.3d 1, 6 (1st Cir.1995). To satisfy the plain view exception to the warrant requirement the government must establish that:

(1) the law enforcement agent was legally in a position to observe the seized evidence and (2) the incriminating nature of the evidence was immediately apparent to the officer.

*United States v. Goodridge,* 945 F.Supp. 359, 370 (D.Mass.1996). Even though Agent Irvine was lawfully present in the defendant's home pursuant to a valid and constitutional warrant, children's clothing does not constitute evidence of an incriminating nature that is immediately apparent to the officer. Therefore, the children's clothing will be suppressed.

■ The calendar containing images of boys is likewise not contemplated in the description of the items to be seized. The warrant authorizes the seizure of pornographic images of children. It does not authorize the seizure of innocuous images of children.

■ The defendant challenges the seizure of the Commodore computer equipment on the grounds that the agents were not authorized to search the basement. The search warrant authorized the search of:

the apartment residence of Christopher Albert, at 15 Franklin Street, Leominster, MA, and further described as the first floor apartment in a wooden framed, two-story multi-family residence.

■ The warrant does not explicitly authorize the search of the basement and Albert did not consent to such a search. The search of a basement connected to an apartment in a multi-unit building is, however, permissible under search warrants limited to the apartment. *United States v. Vaughan,* 875 F.Supp. 36, 44 (D.Mass. 1995).

In *Vaughan,* a search warrant authorized the search of a first-floor apartment

in a three-family house for drug paraphernalia. *Id.* at 40. While executing the search, the officers noticed a basement door located in the common hallway of the first-floor apartment. *Id.* at 41. The officer asked the defendant for a key to the locked door which the defendant turned over. *Id.* The officer thereafter searched the basement and found a sawed-off shotgun. *Id.*

The district court denied the defendant's motion to suppress the shotgun on the grounds that although the defendant did not consent to the search of the basement, 1) it was reasonable to conclude that the defendant had access to the basement in light of the layout of the first floor, 2) the basement was part of the first floor unit and 3) it was therefore reasonable to surmise that the basement contained objects of the search. *Id.* at 44.

As in *Vaughan,* the basement in this case was accessible from the interior of the defendant's apartment by a stairway. It was therefore reasonable to conclude that the defendant had access to the basement and that the basement might contain objects relating to child pornography. The computer equipment seized from the basement will not, therefore, be suppressed.

■ Nor did the seizure of the Commodore computer equipment exceed the probable cause established by the affidavit in support of the warrant. The warrant explicitly authorizes the seizure of computer equipment. Moreover, the warrant application established probable cause to believe that the computers in the defendant's home contained images of child pornography. Although Commodore computers are older than most computers, it was reasonable for the agents conducting the search to conclude that there was a likelihood that the Commodore computer equipment could contain images of child pornography.

The remaining contested items are included within the descriptions in Schedule A and, as stated above, Schedule A is sufficiently particular and supported by probable cause. Video tapes are explicitly listed in paragraph 5 of Schedule A. Video tape reels also fall within that category and audio tapes fall within the correspondence category.

■ The CD recorder is a computer-related device that can be used to transfer and copy images and other data from the computer onto compact disks. The seizure of the CD recorder was supported by probable cause because the affidavit states that the informant received images of child pornography from the defendant that were stored on compact disks.

### III. *Motion for an Evidentiary Hearing*

Because there are no factual issues in dispute with respect to the defendant's motion to suppress, it is unnecessary to conduct an evidentiary hearing on the motion. *See United States v. McGill,* 11 F.3d 223, 225 (1st Cir.1993) (stating that a defendant is not entitled as of right to an evidentiary hearing on a pretrial motion and such hearings are the exception rather than the rule).

### IV. *Motion to Dismiss*

The defendant moves to dismiss the indictment on the following three grounds: 1) the sections of the law under which he is indicted, namely 18 U.S.C. § 2252A(a)(5)(B) and 2256(8) and 2256(9) violate the First Amendment on their faces because they are vague and overbroad;
2) 18 U.S.C. § 2252A is unconstitutional as applied in this case because there is no substantial nexus to interstate commerce in the actions of the defendant charged in counts one or two of the indictment; and

3) 18 U.S.C. § 2252A, insofar as it reaches the simple possession of child pornography in the home, is unconstitutional as a violation of the right to privacy under the First, Fourth, Fifth, Ninth and Fourteenth Amendments.

## A. Vagueness and Overbreadth

The defendant argues that the definitions of child pornography contained in 18 U.S.C. §§ 2256(8) and (9) are vague and overbroad on their face, and that because they are incorporated in the section defining the crime, § 2252A, that section is also unconstitutional. The statute under which the defendant has been indicted punishes any person who:

> knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer.

18 U.S.C. § 2252A(a)(5)(B).

The statute defines "child pornography" as:

> any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where-
>
> (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
>
> (B) such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct;
>
> (C) such visual depiction has been created, adapted, or modified to ap-

pear that an identifiable minor is engaging in sexually explicit conduct; or

> (D) such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct.

The statute defines "identifiable minor" as (A) a person:

> (i)(I) who was a minor at the time the visual depiction was created, adapted, or modified; or
>
> (II) whose image as a minor was used in creating adapting, or modifying the visual depiction; and
>
> (ii) who is recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature; and
>
> (B) shall not be construed to require proof of the actual identity of the identifiable minor.

The challenge that the defendant makes was rejected by the First Circuit Court of Appeals in *United States v. Hilton*, 167 F.3d 61 (1st Cir.1999) and this Court is bound by that decision. The defendant makes the argument here in order to preserve it on appeal. The Ninth Circuit ruled that the statute is unconstitutionally vague and overbroad in *The Free Speech Coalition v. Reno*, 198 F.3d 1083 (9th Cir. 1999) and the Supreme Court granted the government's petition for certiorari in January, 2001. *Id.* 2001 U.S. LEXIS 944. Every other circuit court that has, however, addressed the issue has upheld the statute's constitutionality.

## B. Nexus Between the Defendant's Conduct and Interstate Commerce

▪ The defendant argues that the statute, 18 U.S.C. § 2252A is unconstitu-

tional on its face and as applied in this case because there is no substantial connection between the actions of the defendant and interstate commerce. The First Circuit has rejected that argument in *United States v. Robinson*, 137 F.3d 652 (1st Cir. 1998) in which it ruled that the regulated activity has a sufficient nexus to interstate commerce because 1) the statute requires the government to prove an interstate nexus as an element of the offense and 2) child pornography is a multimillion dollar industry that operates on a national scale. This Court is bound by the decision of the Circuit Court for this Circuit, and therefore finds that the statute is not unconstitutional on its face.

The defendant also argues that the statute is unconstitutional as applied to him in this case because there is insufficient evidence of a nexus between his activities and interstate commerce.

The general rule is, however, that a defendant may not attack an indictment on grounds that the evidence presented to the grand jury was inadequate. *United States v. Rodriguez*, 1996 U.S. Dist. LEXIS 9717, *60 (D.Mass.1996). On a motion to dismiss, the court must take as true all of the allegations contained in the indictment. *United States v. MacWeeney*, 2000 U.S. Dist. LEXIS 15798, *4 (S.D.N.Y. 2000).

Here, the indictment alleges that the defendant possessed and distributed child pornography that was at one time shipped or transported in interstate commerce. As part of its case, the government must prove that the child pornography moved in interstate commerce. This argument cannot be addressed on a motion to dismiss and the proper time to allege insufficiency of the evidence is on a motion for judgment of acquittal at the close of the government's case. The statute is therefore found to be constitutional as applied in this case.

## C. Whether the Statute Violates the First, Fourth, Fifth, Ninth and Fourteenth Amendments.

The defendant argues that § 2252A is unconstitutional and violates his right to privacy insofar as it reaches the "simple possession of child pornography in the home." Here, the government alleges and seeks to prove, however, that the defendant possessed and distributed child pornography that at one time traveled in interstate commerce.

Also, as stated above, every circuit court that has addressed the issue of the statute's constitutionality has upheld it. For example, the First Circuit has found that the statute serves the compelling interest of "prosecuting those who promote the sexual exploitation of children." *Hilton*, 167 F.3d at 69 (quoting *New York v. Ferber*, 458 U.S. 747, 761, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)). The Court found that the statute was:

> not aimed at controlling a persons' private thoughts, but had been enacted to protect victims of child pornography and to destroy a market for the exploitative use of children.

*Id.* at 70 (quoting *Osborne v. Ohio*, 495 U.S. 103, 109, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990)).

In upholding the constitutionality of the statute, the First Circuit stated that child pornography is an unprotected category of expression that may be freely regulated. *Id.* at 69. Even where the statute seeks to regulate virtual images of child pornography, it serves such compelling interests as protecting the privacy of actual children whose innocuous images are altered to create sexually explicit pictures and depriving child abusers of a criminal tool used to entice children into participat-

ing in sexual activities or to blackmail children into submitting to abuse. *Id.* at 67–68. The defendant's constitutional challenges are accordingly rejected.

## V. *Ex Parte Motion for Funds for Employment of Forensic computer Expert*

The defendant seeks $15,000 for the employment of a Computer Forensics Expert named Judd Robbins in order to "undertake a complete defensive assessment and analysis of the alleged contents of any and all computer disks, computer hard drives, and computer files seized by the government." Defendant is indigent and asserts that such analysis is necessary in order to prepare an adequate defense.

Pursuant to 18 U.S.C. § 3006A, an attorney for an indigent defendant may request expert services in an *ex parte* application. The Court may authorize payment for such services but such compensation:

> shall not exceed $1,000, exclusive of reimbursement for expenses reasonably incurred, unless payment in excess of that limit is certified by the court...if the services were rendered in connection with a case disposed of entirely before him, as necessary to provide fair compensation for services of an unusual character or duration, and the amount is approved by the chief judge of the circuit. The chief judge of the circuit may delegate such approval authority to an active circuit judge.

18 U.S.C. § 3006A(e)(3).

■ The defendant bears the burden of demonstrating the necessity of expert services for an adequate defense. *United States v. Algarin De Jesus,* 211 F.3d 153, 155 (1st Cir.2000). Here, the defendant has met this burden. He is indigent and unable to afford the services of an expert as evidenced by the court's appointment of counsel. His defense of the case, depends largely on the analysis of the evidence contained on the defendant's computer and computer equipment.

■ The defendant has submitted the rates of 14 computer forensics experts whose rates range from $35 to $160 per hour. Funds in excess of $1,000 are warranted in this case, but no sufficient showing has been made to justify the full amount requested. This Court will therefore authorize expert funds in the amount of $5,000 without prejudice to a supplemental application if and when good cause is shown. All fees shall be paid upon completion of the expert's services, and in no event will retainer fees be authorized.

## ORDER

For the reasons set forth in the Memorandum above:

1) the defendant's motion to suppress (Docket No. 24) is, with respect to the children's clothing and the boy calendar, ALLOWED, and is otherwise DENIED;

2) the defendant's motion for an evidentiary hearing (Docket No. 24) is DENIED;

3) the defendant's motion to dismiss (Docket No. 39) is DENIED; and

4) the defendant's motion for expert funds (Docket No. 33) is ALLOWED in the amount of $5,000, without prejudice to an application for additional funds for good cause shown.

So ordered.